RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

File Name: 12a0336p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

GREG JOLIVETTE,

        *Plaintiff-Appellant*,

    v.

JON HUSTED; FRANK CLOUD; TOM ELLIS;
JUDITH SHELTON; BRUCE CARTER,

        *Defendants-Appellees*.

No. 12-3998

_____

Appeal from the United States District Court
for the Southern District of Ohio at Columbus.
No. 2:12-cv-00603—George C. Smith, District Judge.

Argued: September 11, 2012

Decided and Filed: September 14, 2012

Before: MERRITT, MOORE, and McKEAGUE, Circuit Judges.

_____

## COUNSEL

**ARGUED:** Donald J. McTigue, McTIGUE & McGUINNIS LLC, Columbus, Ohio, for
Appellant. Aaron D. Epstein, OFFICE OF THE OHIO ATTORNEY GENERAL,
Columbus, Ohio, for Appellee **ON BRIEF:** Donald J. McTigue, J. Corey Colombo,
Mark A. McGinnis, McTIGUE & McGUINNIS LLC, Columbus, Ohio, for Appellant.
Aaron D. Epstein, Michael J. Schuler, OFFICE OF THE OHIO ATTORNEY
GENERAL, Columbus, Ohio, for Appellee.

    MOORE, J., delivered the opinion of the court, in which McKEAGUE, J., joined.
MERRITT, J. (pp. 17–19), delivered a separate dissenting opinion.

1

———————————

**OPINION**

———————————

KAREN NELSON MOORE, Circuit Judge.  Plaintiff-Appellant Greg Jolivette ("Jolivette") appeals the district court's denial of his request for declaratory relief and for a preliminary and a permanent injunction that would allow him to run as an independent candidate for the Office of State Representative for Ohio's 51st House District in the upcoming November 6, 2012 general election.  Jolivette seeks to prevent members of the Butler County, Ohio Board of Elections and Ohio's Secretary of State, Jon Husted (together, "Defendants"), from blocking his access to the ballot as an independent candidate.  Jolivette claims that the defendants' denial of his petition for candidacy as an independent violated his rights to free speech and association guaranteed by the First and Fourteenth Amendments.  Jolivette also challenges differences in Ohio election statutes regulating independent versus partisan candidates, arguing that these portions of Ohio's statutory election framework violate the Equal Protection Clause. Jolivette brings his constitutional claims to federal court pursuant to 42 U.S.C. § 1983. The United States District Court for the Southern District of Ohio denied preliminary and permanent injunctive relief, as well as declaratory relief, finding no merit to any of Jolivette's constitutional claims.  *See Jolivette v. Husted*, No. 2:12–cv–603, — F. Supp. 2d —, 2012 WL 3527733, at *16 (S.D. Ohio Aug. 15, 2012).  For the reasons discussed below, we **AFFIRM** the district court's judgment.

## I.  BACKGROUND

Plaintiff Greg Jolivette desires to appear on the ballot at the upcoming November 6, 2012 general election as an independent candidate for the Office of State Representative for Ohio's 51st House District in Butler County, Ohio.  From approximately 1997 to 2010, prior to his current attempted independent candidacy, Jolivette served as a Republican State Legislator and a Republican Butler County Commissioner.  R. 11-3 (Transcript of Bd. of Elections Protest Hearing, May 30, 2012 at 22:8–11) (Page ID #143).  Jolivette was also elected to, and served on, the Butler

County Republican Party's Central Committee from 2008 until mid-December 2011, when he resigned from the position. *Id.* at 22:12–16 (Page ID #143).

On November 29, 2011, Jolivette filed a Declaration of Candidacy to run as a Republican for the Office of State Representative for Ohio's 51st House District. R. 18-4 (Joint Ex. 13 at 1–9) (Page ID #337–45). Ohio law requires that candidates seeking to run in a party primary accompany their Declaration of Candidacy with at least fifty signatures from members of the same political party. OHIO REV. CODE § 3513.05. As part of his Declaration of Candidacy, Jolivette submitted four part-petitions containing seventy-two signatures. However, Jolivette failed to sign one of the part-petitions containing seventeen signatures, and another six signatures on the other signed petitions were of "questionable validity." *Jolivette*, 2012 WL 3527733, at *2. The unsigned part-petition and the possible invalid signatures meant that Jolivette was possibly ineligible to run as a Republican. *See* OHIO REV. CODE § 3513.05.

On December 14, 2011, the Board of Elections met and considered Jolivette's candidacy as a Republican. Jolivette, who was present at this meeting, argued in favor of certifying his petition to run in the Republican primary. *See Jolivette*, 2012 WL 3527733, at *2. At the meeting, the Board decided to give Jolivette extra time to gather additional evidence and arguments to support his position. *Id.* At this time, the district court found that Jolivette "still intended to run as a Republican, but was contemplating his option to run as an independent." *Id.*; *see* R. 11-3 (Transcript of Bd. of Elections Protest Hearing, May 30, 2012 at 26:6–12) (Page ID #147). The following day, December 15, 2011, Jolivette met with Husted regarding his candidacy and the possible invalidity of his Republican petition. The district court concluded that after this meeting, approval of Jolivette's candidacy as a Republican by the Board of Elections "remained uncertain." *Jolivette*, 2012 WL 3527733, at *2. On December 19, 2011, Jolivette withdrew his candidacy as a Republican and resigned from the Butler County Republican Party Central Committee. R. 2 (Compl. ¶¶ 8–9) (Page ID #4). Jolivette alleges that at this time, he "left the Republican Party in good faith" and "no longer wish[ed] to be affiliated with the Republican Party." *Id.* ¶ 10 (Page ID #4). Jolivette

testified that his relationship with the Republican Party had been deteriorating since 2008, and that the party refused to support him after "tough" budgetary votes he made as County Commissioner. *See* R. 27 (August 6, 2012 Evidentiary Hearing Transcript at 10:18–11:6) (Page ID #504–05); Appellant Br. at 13–14. Jolivette subsequently lost the Republican endorsement for County Commissioner in 2010 and was defeated in the Republican primary that year. Appellant Br. at 13–14.

On February 22, 2012, Jolivette prepared a nominating petition and Statement of Candidacy to run as an independent candidate for the same office as his Republican petition, State Representative for Ohio's 51st House District. *Jolivette*, 2012 WL 3527733, at *3. The petition and Statement of Candidacy were filed on March 5, 2012. *Id.* Jolivette did not vote in any party primary the following day, March 6, 2012. As of the time Jolivette submitted his petition for candidacy as an independent, Jolivette had on file with the Board of Elections a "Designation of Treasurer" which indicated that he was affiliated with the Republican Party. *Id.* This Designation of Treasurer had been filed with the Board of Elections on July 15, 2008, but was not amended until May 4, 2012, when Jolivette filed an amended form identifying himself as an independent. R. 11-1 (Joint Evid. Ex. I) (Page ID #82–86). Additionally, as of March 5, 2011, when the independent petition was filed, Jolivette's campaign committee maintained a website which indicated he would "be a vote for strong Republican leadership." R. 11-3 (Transcript of Bd. of Elections Protest Hearing, May 30, 2012 at 29:10–24) (Page ID #150).

On April 19, 2012, a protest was filed by three members of the Republican Party challenging Jolivette's candidacy as an independent on the basis that he was not unaffiliated from the Republican Party. *See* R. 2 (Compl. ¶ 14) (Page ID #5); OHIO REV. CODE § 3513.262. On May 16, 2012, the Butler County Board of Elections approved Jolivette's petition, certified him to be on the ballot, and scheduled the protest hearing. *Jolivette*, 2012 WL 3527733, at *4. The protest hearing, held on May 30, 2012, resulted in a tie vote with respect to whether to grant or deny the protest, with the two Democratic board members voting to deny the protest, and the two Republican board

members voting to grant the protest. The matter was then referred to Husted. Husted voted on June 26, 2012 to grant the protest, thereby breaking the tie, concluding that Jolivette is "not unaffiliated and cannot run as an independent candidate for this election." R. 11 (Joint Evid. Ex. 1, at 2) (Page ID #50). To support his decision, Husted cited Jolivette's past voting history in Republican Party primary elections, his prior service as a Republican legislator and Republican County Commissioner from 1997 to 2010, and his filing of a petition to run for the same office in the same cycle as a Republican. *Id.*

On July 9, 2012, Jolivette filed this action in the U.S. District Court for the Southern District of Ohio seeking declaratory and injunctive relief, on the grounds that Defendants' refusal to permit him to appear on the ballot as an independent candidate violated his constitutional rights. R. 2 (Compl. ¶¶ 31, 33, 37) (Page ID #9–10). Jolivette argues that the decision to block his access to the ballot as an independent candidate because he was affiliated with a political party violated his First, Fifth, and Fourteenth Amendment rights, and that the Ohio election framework governing disaffiliation from a political party violates the Equal Protection Clause. The district court found that neither preliminary nor permanent injunctive relief was warranted, based on a finding that none of Jolivette's constitutional claims had merit, and as a result dismissed the case. *Jolivette*, 2012 WL 3527733, at *13, 16. Jolivette timely appealed the order denying relief to this Court. R. 26 (Notice of Appeal at 1) (Page ID #493).

Because Jolivette's complaint raises constitutional claims, the district court had jurisdiction under 28 U.S.C. § 1331. *See Morrison v. Colley*, 467 F.3d 503, 505–06 (6th Cir. 2006). We have jurisdiction over the appeal pursuant to 28 U.S.C. § 1291.

## II. STANDARD OF REVIEW

We review the district court's denial of preliminary and permanent injunctive relief for abuse of discretion. *See ACLU of Ohio, Inc. v. Taft*, 385 F.3d 641, 645 (6th Cir. 2004). Accordingly, we review "the district court's legal conclusions de novo and its factual findings for clear error." *Taubman Co. v. Webfeats*, 319 F.3d 770, 774 (6th Cir. 2003) (quoting *Owner-Operator Indep. Drivers Ass'n v. Bissell*, 210 F.3d 595,

597 (6th Cir. 2000)); *see Worldwide Basketball and Sport Tours, Inc. v. NCAA*, 388 F.3d 955, 958 (6th Cir. 2004).  We also review for abuse of discretion the district judge's decision not to grant declaratory relief.  *See Taft*, 385 F.3d at 645 ("Although the district court did not specifically rule on the [plaintiff's] request for declaratory relief, instead dismissing the case in toto after ruling on the [plaintiff's] motion for preliminary injunctive relief, we review a 'district court's exercise of discretion under the Declaratory Judgment Act, 28 U.S.C. § 2201(a), for abuse of discretion.'" (quoting *Scottsdale Ins. Co. v. Roumph*, 211 F.3d 964, 967 (6th Cir. 2000))).

In considering whether preliminary injunctive relief should be granted, a court considers four factors:  "(1) whether the movant has a strong likelihood of success on the merits; (2) whether the movant would suffer irreparable injury without the injunction; (3) whether issuance of the injunction would cause substantial harm to others; and (4) whether the public interest would be served by issuance of the injunction." *Chabad of S. Ohio v. City of Cincinnati*, 363 F.3d 427, 432 (6th Cir. 2004) (quoting *Blue Cross & Blue Shield Mut. of Ohio v. Blue Cross & Blue Shield Ass'n*, 110 F.3d 318, 322 (6th Cir. 1997)).  "Although no one factor is controlling, a finding that there is simply no likelihood of success on the merits is usually fatal." *Gonzales v. Nat'l Bd. of Med. Examiners*, 225 F.3d 620, 625 (6th Cir. 2000).  "In general, '[t]he standard for a preliminary injunction is essentially the same as for a permanent injunction with the exception that [for a preliminary injunction] the plaintiff must show a likelihood of success on the merits rather than actual success.'" *ACLU of Ky. v. McCreary Cnty.*, 607 F.3d 439, 445 (6th Cir. 2010) (quoting *Amoco Prod. Co. v. Vill. of Gambell*, 480 U.S. 531, 546 n.12 (1987)).  The district court found that none of Jolivette's constitutional claims had merit, and that when balanced with the other factors, injunctive relief was not warranted. *Jolivette*, 2012 WL 3527733, at *16.  We consider each of Jolivette's arguments on appeal in turn.

### III.  FIRST AMENDMENT CLAIM

Jolivette first argues that Defendants' determination that he is ineligible to run as an independent candidate because he is affiliated with a political party violates his

First Amendment rights to free speech and association. *See* Appellant Br. at 8. The focus of our inquiry is thus on this constitutional question.[1] The grant of the protest against Jolivette's independent candidacy by the Board of Elections and Husted was based on Ohio's requirement that independent candidates claim, no later than four p.m. on the day before the primary elections, that they are not affiliated with a political party. *See* OHIO REV. CODE §§ 3501.01(I); 3513.257. Ohio law defines an "Independent Candidate" as "any candidate who claims not to be affiliated with a political party, and whose name has been certified . . . through the filing of a statement of candidacy and nominating petition, as prescribed in section 3513.257 of the Revised Code." *Id.* § 3501.01(I). In turn, § 3513.257 requires independent candidates to file a statement of candidacy and nominating petition no later than four p.m. the day before the day of the primary elections. *See id.* § 3513.257.[2] Jolivette's First Amendment argument is essentially an attack on the application of these ballot-access restrictions to his petition for candidacy.

The Supreme Court's approach to constitutional challenges to election regulations requires balancing a state's "broad power" to regulate elections against the "fundamental rights" of candidates and voters, including the right to "freedom of political association." *See Tashjian v. Republican Party of Conn.*, 479 U.S. 208, 217 (1986); *see also Lawrence v. Blackwell*, 430 F.3d 368, 372–73 (6th Cir. 2005) (explaining that in evaluating election regulations, "[c]ourts must undertake the difficult task of considering and weighing the asserted injury to fundamental constitutional rights, the precise interest of the state in the regulation at issue, and the extent to which it is necessary to burden important rights in order to achieve any important state interests."). On the one hand, the Court has recognized that in structuring the election process, "States may, and inevitably must, enact reasonable regulations of parties, elections, and

---

[1] Jolivette's complaint does not include a state-law claim that the disqualification of his independent candidacy violated Ohio law. *See* R. 2 (Compl.) (Page ID #2–12)

[2] Although the requirement for an independent candidate to "claim[] not to be affiliated with a political party" is contained in the text of § 3501.01(I), it is carried through to § 3513.257 by reference to an "independent candidate." We will continue to use the convention of other courts of referring to § 3513.257 as requiring a claim of non-affiliation.

ballots to reduce election- and campaign-related disorder." *Timmons v. Twin Cities Area New Party*, 520 U.S. 351, 358 (1997); *see Storer v. Brown*, 415 U.S. 724, 730 (1974) ("[A]s a practical matter, there must be a substantial regulation of elections if they are to be fair and honest and if some sort of order, rather than chaos, is to accompany the democratic process."). On the other hand, states' broad authority to regulate elections must be carefully balanced against the "fundamental" right to associate freely for the advancement of political ideas. *See Anderson v. Celebrezze*, 460 U.S. 780, 787–88 (1983); *Williams v. Rhodes*, 393 U.S. 23, 30 (1968) (holding that the right to freedom of political association "rank[s] among our most precious freedoms").

The level of scrutiny applied to a state election regulation depends on the burden imposed by the regulation on the constitutional rights of voters and candidates. *See Burdick v. Takushi*, 504 U.S. 428, 434 (1992). In evaluating an election regulation against a constitutional challenge, "we weigh the 'character and magnitude' of the burden the State's rule imposes" on citizens' constitutional rights against "the interests the State contends justify that burden, and consider the extent to which the State's concerns make the burden necessary." *Timmons*, 520 U.S. at 358 (quoting *Burdick*, 504 U.S. at 434). If the regulation imposes a severe burden on plaintiffs' rights, the regulation must be "narrowly tailored and advance a compelling state interest." *Id.* "Lesser burdens, however, trigger less exacting review, and a State's important regulatory interests will usually be enough to justify reasonable, nondiscriminatory restrictions." *Id.* (internal quotation marks omitted).

In *Morrison v. Colley*, we upheld against a First Amendment challenge the application of § 3513.257 to disqualify a would-be independent candidate from running in the general election because he was found to be affiliated with a political party. 467 F.3d at 508. We held that § 3513.257 requires a claim of independence to be made "in good faith." *Id.* at 509. In *Morrison*, the plaintiff, Morrison, filed a petition to run as an independent candidate for office as United States Representative in Ohio's Fifteenth Congressional District. *Id.* at 504. Subsequent to filing his independent petition, Morrison voted in a Republican primary, and he also appeared on the

Republican primary ballot for his county's Republican Party Central Committee and the Ohio Republican Party State Central Committee. *Id.* at 505. On these facts, we found that Morrison's claim of independence was not made in good faith, because simultaneous to his claim of independence, Morrison "evinced a desire to be affiliated with the Republican Party" by "registering Republican, running as a Republican in the primary, and voting in the Republican primary." *Id.* at 510. We further found that § 3513.257 did not violate First or Fourteenth Amendment freedoms under the facts of that case. *Id.* at 508. We explained that the district court "concluded correctly that Ohio Rev. Code § 3513.257 does not impose a severe restriction" on candidates or voters, and that it is "merely a reasonable, nondiscriminatory regulation to require would-be independent candidates to claim . . . that they are free of affiliation with any political party." *Id.* at 507–08.

In this case, there are objective facts in the record indicating that Jolivette was affiliated with Republican Party at the time he filed his petition as an independent. As of the time his independent petition was submitted, Jolivette had on file a Designation of Treasurer indicating that he was affiliated with the Republican Party. This Designation of Treasurer was not amended until May 5, 2012. R. 11-1 (Joint Evid. Ex. I) (Page ID #82–86). In addition, at the time Jolivette's independent petition was filed, his campaign committee maintained a website which stated that Jolivette would be a "Vote for Strong Republican Leadership." R. 11 (Joint Evid. Ex. F) (Page ID #68). Further, after he filed as an independent, Jolivette continued to maintain a Facebook page that indicated he was affiliated with various Republican organizations, including the Ohio-Republican Party and Positively Republican!, among others. R. 11 (Joint Evid. Ex. G) (Page ID #70). These objective factors are "inconsistent with [Jolivette's] claim that he is unaffiliated with a political party." *State ex rel. Livingston v. Miami Cnty. Bd. of Elections*, 963 N.E.2d 187, 192 (Ohio Ct. App. 2011). Although Jolivette argues that he has not actively participated in partisan activities or promoted himself as a partisan candidate since his disaffiliation, there is evidence in the record indicating that Jolivette did not completely undo his affiliation with the Republican Party in advance of filing his petition to run as an independent.

Jolivette tries to distinguish the facts of his case from the facts in *Morrison*, mainly by arguing that the Board of Elections in this case—unlike in *Morrison*—considered conduct from *before* he filed as an independent. *See* Appellant Br. at 8. In his tie-breaking vote, Husted considered Jolivette's voting history in recent past Republican primaries, his holding of office as a Republican Legislator and Republican County Commissioner until 2010, and his pursuit of access to the Republican primary ballot as a candidate for the 51st House District in the 2012 election cycle up until it was clear that his Republican petition did not have sufficient valid signatures. R. 11 (Joint Evid. Ex. 1) (Page ID #50). As a result, Husted agreed with the Board of Elections' members who found Jolivette's claim of non-affiliation to be "disingenuous," *see* R. 11-2 (Joint Evid. Ex. 5) (Page ID #105), and found that "Jolivette is not unaffiliated and cannot run as an independent candidate for this election." R. 11 (Joint Evid. Ex. 1) (Page ID #50). Relying in part on a candidate's conduct prior to his or her filing as an independent candidate is permissible under Ohio law. *See Livingston*, 963 N.E.2d at 192; Ohio Sec'y of State, Advisory Op. No. 2007-05, at 4 (June 4, 2007) (allowing the Board to consider: "past voting history, information submitted on required election-related filings, political advertisements, participation as a political party officer or member, or holding a public office for which the office holder was nominated through a political party's primary election and elected on a partisan ticket"). *Cf.* OHIO REV. CODE § 3513.19(A)(3) (stating that a voter will be considered affiliated with a political party if he or she voted in that party's primary in the immediately preceding two calendar years, for purposes of determining eligibility to vote in a party primary election). Although no Ohio case to date has upheld the disqualification of an independent candidate "solely on the basis of prefiling conduct or activity," such conduct may be considered in the Board of Elections' overall determination. *Livingston*, 963 N.E.2d at 192 (rejecting the disqualification of an independent candidate when the evidence of lack of good faith in disaffiliating was based solely on pre-filing conduct).

Jolivette argues that such consideration of an independent candidate's pre-filing conduct is impermissible as a matter of constitutional law.**3** *See* Appellant Br. at 8 (stating that the issue in the case is "[w]hether a Board of Election's determination to deny an independent candidate's access to the ballot based on evidence of party affiliation that occurred prior to the candidate's filing of an independent candidate petition . . . violates the candidate's First Amendment speech and association rights"); *id.* at 20–23. This argument is unavailing. A ballot access restriction is not per se unconstitutional solely because it permits a decisionmaker to look backward in time from the filing of a petition for independent candidacy to determine if a candidate disaffiliated; indeed, the Supreme Court upheld a backward-looking election restriction requiring a per se one-year waiting period for candidates seeking to run as independents who disaffiliated from a political party. *See Storer*, 415 U.S. at 736. The Court found that the per se waiting period helps avoid "independent candidacies prompted by short-range political goals, pique, or personal quarrel." *Id.* at 735. The state's interests in "the stability of its political system" and preventing "splintered parties and unrestrained factionalism" outweighed the burden placed on would-be independent candidates who disaffiliate from a political party. *Id.* at 736; *see also Van Susteren v. Jones*, 331 F.3d 1024, 1026 (9th Cir. 2003) (upholding California's one-year waiting period disaffiliation statute).

In *Morrison*, we concluded that the application of § 3513.257's requirement that "independent candidates [] claim on the day before the primary that they are not affiliated with any political party" was constitutionally permissible. *Morrison*, 467 F.3d at 508. First, our holding that § 3513.257 imposed only a small burden on would-be candidates renders inapposite Jolivette's argument that strict scrutiny applies. *See* Appellant Br. at 18–19. Rather, because the requirement that independent candidates make a good-faith claim of non-affiliation on the day before the primary imposes only

---

**3**To the extent that Jolivette's First Amendment argument is really a claim that the good-faith requirement lacks objective standards and is thus void for vagueness, we do not address his argument here. As discussed *infra*, Jolivette did not make a void-for-vagueness argument at the district court, and thus it is waived on appeal.

a small burden, the state "need only show that this requirement advances an important state interest." *Morrison*, 467 F.3d at 508.

Section 3513.257 does not inhibit Jolivette's ability freely to write, speak, organize campaigns, or promote any set of political beliefs that he wishes. *See Jenness v. Fortson*, 403 U.S. 431, 438 (1971). Instead, § 3513.257 is a means of restricting the candidates who may appear on the ballot, and does so by requiring that independent candidates make a good-faith claim that they are free of affiliation with a political party at the time they submit their petitions for independent candidacy. Such a restriction on ballot access "is expressive of a general state policy aimed at maintaining the integrity of the various routes to the ballot." *Storer*, 415 U.S. at 733. The Supreme Court has found that the state may legitimately "avoid[] overcrowded ballots" and "protect the integrity of its political processes from frivolous or fraudulent candidacies." *Bullock v. Carter*, 405 U.S. 134, 145 (1972). Further, the state has an interest in regulating ballot access in order to avoid "confusion, deception, and even frustration of the democratic process at the general election." *Schrader v. Blackwell*, 241 F.3d 783, 789 (6th Cir. 2001) (quoting *Jenness*, 403 U.S. at 442). Ohio's law, though not structured as a per se waiting period, serves these same interests as applied to Jolivette. *Cf.* OHIO REV. CODE § 3513.257 (noting that the purposes of requiring an independent candidate to claim he or she is not affiliated with any political party on the day before the primary elections serves the state's interests in "prevent[ing] splintered parties and unrestrained factionalism," "avoid[ing] political fragmentation," "maintain[ing] the integrity of the ballot," and "ensuring fair and honest elections"). By requiring independent candidates to make a good-faith claim of non-affiliation by the day before the primary, Ohio seeks to maintain the integrity of its different routes to the ballot—the partisan primary and the independent petition.

Under the circumstances of this case, we conclude that the disqualification of an independent candidate based on "a finding that the candidate's claim to have disaffiliated with a political party was not made in good faith because the candidate is not actually

unaffiliated," *Livingston*, 963 N.E.2d at 192, is constitutionally permissible.[4] We thus hold that the application of § 3513.257 to disqualify Jolivette as an independent candidate did not impose a constitutionally impermissible burden on his right to associate freely for the advancement of his political beliefs.

## IV.  VAGUENESS CLAIM

Next, Jolivette argues that the Ohio election framework is unconstitutionally vague, because it contains "no standards or criteria to evaluate a candidate's claim of independence." *See* Appellant Br. at 21; *id.* at 26–30.  Jolivette cannot succeed on this argument because he did not explicitly raise it at the district court.  *See* R. 3 (Mot. for Prelim. Inj. at 7–13) (Page ID #20–26) (failing to make an argument relating to the void-for-vagueness doctrine).  As a rule, we will not review issues if they are raised for the first time on appeal.  *See In re Hood*, 319 F.3d 756, 760 (6th Cir. 2003) ("'It is well-settled that this court will not consider arguments raised for the first time on appeal unless our failure to consider the issue will result in a plain miscarriage of justice.'" (quoting *Overstreet v. Lexington-Fayette Urban Cnty. Gov't*, 305 F.3d 566, 578 (6th Cir. 2002))).  Jolivette's efforts to re-describe his argument about the arbitrariness of the determination that his claim of independence was not made in good faith into a vagueness challenge is a stretch from what was actually argued at the district court.  *See* Appellant Reply Br. at 15–18.  The district court opinion did not consider or rule on a vagueness challenge.  *See Jolivette*, 2012 WL 3527733.  Because Jolivette did not develop the vagueness claim at the district court, we will not consider the argument here. *See Armstrong v. City of Melvindale*, 432 F.3d 695, 700 (6th Cir. 2006) ("[T]he failure to present an issue to the district court forfeits the right to have the argument addressed on appeal.").

---

[4]Because we need only decide the constitutional question to dispose of this case, we do not address what standard of evidence applies under Ohio law to sustain a protest for lack of disaffiliation under § 3513.257, and whether that standard was met in this case.  *See Livingston*, 963 N.E.2d at 192 (holding that a clear and convincing standard of evidence applies).  Jolivette cannot succeed on his federal constitutional claims because he has not shown that the application of Ohio law's "good faith" standard for disaffiliation to his case violated his constitutionally protected rights as a candidate.

## V.  EQUAL PROTECTION CLAIMS

Jolivette's third and fourth arguments challenge portions of the Ohio election statutory framework under the Equal Protection Clause of the Fourteenth Amendment. Appellant Br. at 30, 38; *see* R. 2 (Compl. ¶¶ 33, 37) (Page ID #9–10).  Jolivette's first contention is that the Ohio election statutes are unconstitutional because they leave "to the discretion of a county board of elections whether to allow an individual affiliated with a political party to become unaffiliated, i.e. independent," but permit candidates to switch from one party to another "freely."  Appellant Br. at 31.  Section 3513.191 of the Ohio Revised Code allows candidates previously affiliated with a political party to run in a different party's primary under certain defined circumstances.  OHIO REV. CODE § 3513.191.  In contrast, the eligibility of candidates seeking to disaffiliate from a political party and run as independents is governed by the "good faith" standard as explained in *Morrison*.  467 F.3d at 508–09.  Second, Jolivette takes issue with the code provisions relating to who may bring protests against the nominating petitions of partisan versus independent candidates.  *See* Appellant Br. at 38.  In Ohio, although "any qualified elector eligible to vote for the candidate whose nominating petition he objects to" may file a written protest against the nominating petition of an independent candidate, *see* OHIO REV. CODE § 3513.262, only a "qualified elector who is a member of the same political party as the candidate and who is eligible to vote in the primary election for the candidate" may protest the candidacy of a person seeking a party nomination.  *Id.* § 3513.05.  Jolivette argues that these differences in the statutes governing independent versus partisan candidates constitute unjustified "unequal treatment."  Appellant Br. at 39.

We examine Jolivette's equal-protection challenges to the Ohio statutory framework using the same balancing framework as his First Amendment challenge.  *See* *Burdick*, 504 U.S. at 434; *Anderson*, 460 U.S. at 789.  The Equal Protection Clause of the Fourteenth Amendment states that no state shall "deny to any person within its jurisdiction the equal protection of the laws."  U.S. CONST. amend. XIV, § 1.  This is "'essentially a direction that all persons similarly situated should be treated alike.'"

*Bower v. Vill. of Mount Sterling*, 44 F. App'x 670, 676 (6th Cir. 2002) (quoting *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985)).  A successful equal-protection claim requires that "the government treated the plaintiff disparately as compared to similarly situated persons . . . ."  *Ctr. for Bio-Ethical Reform, Inc. v. Napolitano*, 648 F.3d 365, 379 (6th Cir. 2011) (internal quotation marks omitted).

Jolivette's equal-protection claims do not get off the ground because independent candidates and partisan candidates are not similarly situated for purposes of election regulations.  *See Jenness v. Fortson*, 403 U.S. 431, 440–41 (1971).  In *Jenness v. Fortson*, the Supreme Court upheld Georgia's election regulations that required non-partisan candidates to collect signatures from 5% of voters before their names were printed on the ballot, but had no such requirement for partisan candidates who won their party primary.  *Id.* at 434, 440–41.  The Court held that the state permissibly recognized two alternate paths to the ballot–the party primary and non-partisan candidate petitions–"neither of which [could] be assumed to be inherently more burdensome than the other."  *Jenness*, 403 U.S. at 441.  Because the partisan candidate must win the majority of votes in a party primary, whereas the independent candidate must gather signatures from 5% of the total electorate, the two pathways to the ballot were different, and thus partisan candidates were not similarly situated to independent candidates.  *Id.* at 440–42.  Other federal appellate courts have come to the same conclusion, that for purposes of an Equal Protection Clause challenge to an election regulatory framework, partisan candidates and independent candidates are not similarly situated.  *See, e.g.*, *Curry v. Buescher*, 394 F. App'x 438, 447 (10th Cir. 2010); *Van Susteren*, 331 F.3d at 1026–27.  As the Ninth Circuit pointed out in *Van Susteren*, whereas the primary process is "integral to the election [] because it serves the important function of winnowing out competing partisan candidates," the independent candidate is excused from this process, and thus different restrictions for their access to the ballot are permissible.  *Van Susteren*, 331 F.3d at 1027.  Because of the differences between the pathways to the ballot of partisan versus independent candidates in Ohio, we agree with the district court that Jolivette's equal-protection arguments lack merit.  *See Jolivette*, 2012 WL 3527733, at *14–16.

After examining Jolivette's constitutional claims and finding that none of them have merit, we find no abuse of discretion in the district court's decision to deny Jolivette's requests for a preliminary injunction, a permanent injunction, and declaratory relief. *See Taft*, 385 F.3d at 645.

## VI.  CONCLUSION

For the reasons discussed above, we **AFFIRM** the district court's judgment denying declaratory as well as preliminary and permanent injunctive relief.

———————————

**DISSENT**

———————————

MERRITT, Circuit Judge, dissenting.  I do not agree with the result in this case barring Jolivette from running as an Independent for the state legislature or with the majority's interpretation of Ohio law as set out in the recent case of *Livingston v. Miami County Board of Elections*, 196 Ohio App. 3d 263, 963 N.E.2d 187, decided September 8, 2011, or with the majority's interpretation of the seminal ballot access case on the First Amendment, *Anderson v. Celebrezze*, 460 U.S. 780 (1983).  The bottom line is that Jolivette clearly wants to leave the Republican Party — his long fight in this case is certainly evidence of that choice, along with his many earlier statements to that effect — because the party now rejects him after many years of public service as a Republican. He has nowhere else to turn except as an independent candidate if he is to continue his public service.  What stands in his way is the adverse ruling of the Ohio Secretary of State, a partisan official elected statewide as a Republican, who disagrees with the interpretation given the state's ballot access statute by the highest state court to decide the issue.

In *Livingston,* the state court overruled a decision rejecting the independent candidacy of two candidates for local office because they had voted in Republican primary elections, signed petitions in support of Republican candidates a few months before the election, and previously won office as a Republican candidate for local office. And one of them, Livingston, was a member of the local Republican Executive Committee until he resigned just before filing a petition as an independent candidate. In reversing the decision rejecting their independent candidacies, the court said:

> Consistent with the liberal construction of the laws in favor of candidates, a finding that the candidate's claim was not made in good faith must be supported by clear and convincing evidence . . . . The record supports a finding that both relators may have acted on a calculation that they would have a better chance of winning as independent candidates.  However, that fails to rise to the level of clear and convincing evidence that their claims of disaffiliation from the

> Republican Party were not made in good faith because the claim is a
> sham or deceitful — that is, that either actually remains affiliated with
> the Republican Party. Such proof is necessary to find an impropriety in
> their claims sufficient to permit the board to invalidate their petitions
> pursuant to R.C. 3501.39(A) on a finding of a lack of good faith.

196 Ohio App. 3d at 270-71, 963 N.E.2d at 192-93 (citation omitted). Likewise, in the present case, there is no "clear and convincing" evidence that Jolivette is lying about his choice and no one claims his application is a sham. He has attempted to remove all doubt that he is still a Republican by eliminating former references on a website that he is a Republican and in other ways. He has privately and publicly consistently renounced his membership in the Republican Party. The *Livingston* case is directly contrary to the Ohio Secretary of State's view that Jolivette remains affiliated with the Republican Party. Under Ohio law, the Secretary may try to persuade Jolivette to remain with the GOP but he may not indenture him to the party or deprive him of the right to change his partisan views and associations.

That should be the end of this case and make it unnecessary to reach a First Amendment question. But our court's approval of the rulings below makes it necessary to reach the federal question arising under the First Amendment. Ohio has a number of cases in which the Supreme Court has reversed Ohio's rejection of ballot access by independent candidates or parties thus allowing incumbents to insulate themselves against challengers. *See*, *e.g.*, *Williams v. Rhodes*, 393 U.S. 23 (1968). More recently, an Ohio case in the Supreme Court, *Anderson v. Celebrezze*, 460 U.S. 780 (1983), reversed a Sixth Circuit case upholding Ohio's effort to bar an independent candidacy and further entrench and stabilize the two major parties in their dominant positions.

In *Anderson*, the Court struck down an Ohio effort to require minor parties and independent candidates to file much earlier than the major party candidates. This Ohio policy would prevent the candidacy of individuals and minor parties who become disenchanted during the primary process and decide to quit the party. In this case the candidate was John Anderson, who unsuccessfully sought the Republican nomination for President, but then decided to bolt and to seek the office independently. The

Supreme Court's opinion by Justice John Paul Stevens sets out general First Amendment standards that apply up and down the political hierarchy:

> A burden that falls unequally on new or small political parties or on independent candidates impinges, by its very nature, on associational choices protected by the First Amendment. It discriminates against those candidates and — of particular importance — against those voters whose political preferences lie outside the existing political parties. *Clements v. Fashing*, [457 U.S. 957, 964-65 (1982)] (plurality opinion). By limiting the opportunities of independent-minded voters to associate in the electoral arena to enhance their political effectiveness as a group, such restrictions threaten to reduce diversity and competition in the marketplace of ideas. Historically political figures outside the two major parties have been fertile sources of new ideas and new programs; many of their challenges to the status quo have in time made their way into the political mainstream. *Illinois Elections Bd. v. Socialist Workers Party*, 440 U.S. at 186; *Sweezy v. New Hampshire*, 345 U.S. 234, 250-251 (1957) (opinion of Warren, C.J.). In short, the primary values protected by the First Amendment — "a profound national commitment to the principle that debate on public issues should be uninhibited, robust, and wide-open," *New York Times Co. v. Sullivan*, 376 U.S. 254, 270 (1964) — are served when election campaigns are not monopolized by the existing political parties.

460 U.S. at 793-94 (footnote and parallel citations omitted).

I believe the *Livingston* case standards meet the First Amendment test, but the standards applied by my colleagues do not. The *Livingston* case standards do not "discriminate[] against those candidates and — of particular importance — against those voters whose political preferences lie outside the existing political parties." *Id*. But the majority opinion "restrictions threaten to reduce diversity and competition in the marketplace of ideas." *Id*. The majority opinion undermines our "profound national commitment to the principle that debate on public issues should be uninhibited, robust, and wide open." The majority opinion once again prefers the corporate or establishment side of the case against the iconoclastic individual on his soap box in Hyde Park. I have no idea what Jolivette might do or propose, but he should be given his shot rather than be indentured to the Republican Party because he used to be a Republican.