RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 20a0238p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

───────────────

HOWARD HAWKINS; DARIO HUNTER; JOSEPH R. DEMARE; BECCA CALHOUN; NATHANIEL LANE; BRETT JOSEPH; ANITA RIOS,

　　　　　　　　*Plaintiffs-Appellants,*

　　　*v.*

MIKE DEWINE; FRANK LAROSE; AMY ACTON,

　　　　　　　　*Defendants-Appellees.*

No. 20-3717

───────────────

Appeal from the United States District Court
for the Southern District of Ohio at Columbus.
No. 2:20-cv-02781—James L. Graham, District Judge.

Argued: July 27, 2020

Decided and Filed: August 3, 2020

Before: COLE, Chief Judge; SILER and STRANCH, Circuit Judges.

───────────────

## COUNSEL

**ARGUED:** Robert J. Fitrakis, FITRAKIS & GADELL-NEWTON, LLC, Columbus, Ohio, for Appellants. Benjamin M. Flowers, OFFICE OF THE OHIO ATTORNEY GENERAL, Columbus, Ohio, for Appellees. **ON BRIEF:** Robert J. Fitrakis, FITRAKIS & GADELL-NEWTON, LLC, Columbus, Ohio, for Appellants. Benjamin M. Flowers, OFFICE OF THE OHIO ATTORNEY GENERAL, Columbus, Ohio, for Appellees.

───────────────

## OPINION

───────────────

COLE, Chief Judge. In response to the COVID-19 pandemic, the State of Ohio issued a series of orders restricting in-person gatherings. But it left unchanged its ballot-access laws,

which require candidates and minor political parties hoping to be listed on November's ballot to show that they have a modicum of community support by collecting petition signatures from Ohio voters. The law requires that the signatures be collected in person, a task which has become more difficult in the era of social distancing. This case presents us with the question whether the State's ballot-access requirements, as applied, have become unconstitutionally burdensome in light of the orders restricting in-person gatherings. Binding precedent compels us to conclude that they are not. We therefore affirm the district court.

## I. BACKGROUND

### A. Ohio's Ballot-Access Laws

Two of the plaintiffs in this case—Howard "Howie" Hawkins and Dario Hunter—seek to qualify to run as independent candidates for President of the United States in the November 2020 election. To do so, Ohio law requires them to file with the Ohio Secretary of State a nominating petition with no fewer than 5,000 signatures of qualified Ohio electors by August 5, 2020. *See* Ohio Rev. Code § 3513.257. The signatures must be signed in ink next to the voter's name. Ohio Rev. Code §§ 3501.011(A), 3501.38(B). Each individual circulating petitions for an independent candidate must also sign a statement stating that they witnessed the signature. Ohio Rev. Code § 3501.38(E). The upshot of these two requirements is that each signature must be collected and witnessed in person.

Another set of plaintiffs—Joseph R. DeMare, Nathaniel Lane, Brett Joseph, Becca Calhoun, and Anita Rios—seek to gather signatures for two purposes: to nominate candidates for the November 2020 election and to form the Green Party as a minor political party under Ohio law. To attain that status, the Green Party must file a party formation petition with the Ohio Secretary of State by June 30, 2020. *See* Ohio Rev. Code § 3517.012(A). The petition must include signatures from registered voters equal in number to at least one percent of the total vote in the 2018 Ohio gubernatorial election. *See* Ohio Rev. Code § 3517.01(A)(1)(b)(i). As with the individual candidate petitions, those signatures must be collected in person. Ohio Rev. Code § 3517.012; *see also* Ohio Rev. Code § 3513.257.

Plaintiffs allege that their signature collection efforts were ongoing until the beginning of the pandemic. But the Complaint contains no allegations as to how many signatures had been collected before their efforts halted or whether any efforts to collect signatures have continued since the pandemic's onset.

### B.     Ohio's Response to COVID-19

As COVID-19 spread across the country, Ohio began issuing orders aimed at restricting person-to-person contact. On March 12, 2020, the State prohibited mass gatherings of 100 or more people. March 12 Order at ¶ 2, *available at* https://bit.ly/308nCso. A March 17 order further limited gatherings to 50 people. March 17 Order at ¶ 5, *available at* https://bit.ly/3hLCjrz. Then, on March 22, the State issued an order requiring Ohioans to stay at home. March 22 Order at ¶ 1, *available at* https://bit.ly/3hMb7ZH. Each of these orders contained an explicit exception for conduct protected by the First Amendment. March 12 Order at ¶ 7; March 17 Order at ¶ 5; March 22 Order at ¶ 12(g). On April 30, as the stay-at-home order eased, Ohio issued an order that continued to prohibit most "public and private gatherings" of people, but made explicit that excepted First Amendment protected speech included, among other things, "petition and referendum circulators." April 30 Order at ¶ 4, *available at* https://bit.ly/309GgAl.

### C.     Procedural History

Plaintiffs argue that these orders transform the ballot-access laws—which they agree are constitutional in normal times—into unconstitutional burdens on their First Amendment and Fourteenth Amendment rights. They seek either to enjoin enforcement of the ballot-access laws as applied to them, or to obtain a court order placing Hawkins and Hunter on the November 2020 Presidential ballot and that would form the Green Party as a minor political party in the State of Ohio. The district court granted the State's motion to dismiss, denied Plaintiffs' motion for preliminary injunction, and entered judgment in favor of the State. Plaintiffs now appeal.

## II. ANALYSIS

### A.        The *Anderson-Burdick* Framework

"Common sense, as well as constitutional law, compels the conclusion that government must play an active role in structuring elections; 'as a practical matter, there must be a substantial regulation of elections if they are to be fair and honest and if some sort of order, rather than chaos, is to accompany the democratic processes.'" *Burdick v. Takushi*, 504 U.S. 428, 433 (1992) (quoting *Storer v. Brow*n, 415 U.S. 724, 730 (1974)).  But this regulatory power is accompanied by significant risk, as laws that structure elections "inevitably affect[]—at least to some degree—the individual's right to vote and his right to associate with others for political ends." *Anderson v. Celebrezze*, 460 U.S. 780, 788 (1983).  To determine whether a state election law unduly burdens these crucial constitutional rights, we:

> must weigh 'the character and magnitude of the asserted injury to the rights protected by the First and Fourteenth Amendments that the plaintiff seeks to vindicate' against 'the precise interests put forward by the State as justifications for the burden imposed by its rule,' taking into consideration 'the extent to which those interests make it necessary to burden the plaintiff's rights.'

*Burdick*, 504 U.S. at 434 (quoting *Anderson*, 460 U.S. at 789)).  This balancing test is referred to as the *Anderson-Burdick* framework.

Under the *Anderson-Burdick* framework, we first "determine the burden the State's regulation imposes on the plaintiffs' First Amendment rights." *Thompson v. DeWine*, 959 F.3d 804, 808 (6th Cir. 2020) (order) (per curiam).  "[W]hen those rights are subjected to 'severe' restrictions," the regulation is subject to strict scrutiny and "must be 'narrowly drawn to advance a state interest of compelling importance.'" *Burdick*, 504 U.S. at 434 (quoting *Norman v. Reed*, 502 U.S. 279, 289 (1992)).  But when those rights are subjected only to "reasonable, nondiscriminatory restrictions," the regulation is subject to rational-basis review because "the State's important regulatory interests are generally sufficient to justify" the restriction.  *Id.* (quoting *Anderson*, 460 U.S. at 788).  "For cases between these extremes, we weigh the burden imposed by the State's regulation against 'the precise interests put forward by the State as justifications for the burden imposed by its rule, taking into consideration the extent to which

those interests make it necessary to burden the plaintiff's rights." *Thompson*, 959 F.3d at 808 (quoting *Burdick*, 504 U.S. at 434 (internal quotation marks omitted)).

**B.    The Burden Imposed**

Plaintiffs do not argue that the state's application of the ballot-access requirements to them is unconstitutional because it is unduly burdensome to require in-person signature collection during the COVID-19 pandemic. We therefore do not address that difficult question here. Rather, they argue that it is the state's *response* to the pandemic—specifically, the March 12, March 17, and March 22 Orders—that render the ballot-access laws unconstitutional as applied to them. And though the April 30 Order explicitly exempted "petition and referendum circulators" from the restrictions, April 30 Order at ¶ 4, *available at* https://bit.ly/309GgAl, Plaintiffs argue that that exemption was "overshadowed" by the order's requirement that Ohioans continue to socially-distance. (Appellant Br. at p. 21). The question, then, is how to classify the burden imposed on Plaintiffs by Ohio's ballot-access laws in the period between March 12 and the deadline for petition submission.

We recently answered this precise question as applied to plaintiffs seeking to place local initiatives and constitutional amendments on the November ballot. We determined that Ohio's ballot-access laws—in conjunction with the State's COVID-19 orders—placed only an "intermediate" burden the on plaintiffs' access to the ballot. *Compare Thompson*, 959 F.3d at 809–11 *with Esshaki v. Whitmer*, No. 20-1336, 2020 WL 2185553, at *1 (6th Cir. May 5, 2020) (order).

Plaintiffs' attempt to distinguish *Thompson* is unavailing. They argue that the *Thompson* court "did not consider" whether the exceptions protecting First Amendment activity in the March 12, 17, and 22 orders are unconstitutionally vague.[1] (Appellant Br. at 19; *see also* Appellant R. Br. at p. 7). But the orders explicitly exempt First Amendment protected speech, and it is well-established that the act of collecting signatures for ballot access falls under that

---

[1]The notion that the *Thompson* court "did not consider" whether the language was vague is—at best—tendentious. An argument identical to the ones Plaintiffs make here was briefed in *Thompson*. (No. 20-3526, *Thompson v. DeWine*, Dkt. No. 21, Appellee Br. at p. 12–13; No. 20-3526, *Thompson v. DeWine*, Dkt. No. 26, Appellant Br. at p. 9). So the court had the opportunity to consider it—it just appears not to have credited it.

ambit. *Buckley v. Am. Constitutional Law Found., Inc.*, 525 U.S. 182, 194 (1999) (describing petition circulation as "core political speech"); *Meyer v. Grant*, 486 U.S. 414, 421–22, 425 (1988) (noting that First Amendment protection is "at its zenith" when it comes to petition circulation). There is therefore no reason for us to depart from *Thompson*'s conclusion that the burden imposed on Plaintiffs by Ohio's ballot-access statutes—in light of the state's response to the pandemic—is an intermediate one.

### C.      The State's Justification for the Restrictions

Having classified the burden as intermediate, "[a]t the second step of *Anderson-Burdick* we consider the State's justifications for the restrictions." *Schmitt v. LaRose*, 933 F.3d 628, 641 (6th Cir. 2019). The State offers several justifications for enforcing the ballot-access laws. First, requiring a modicum of support for ballot access furthers the State's substantial interest in fair and orderly elections by avoiding "overcrowded ballots." *See id.* (quoting *Jolivette v. Husted*, 694 F.3d 760, 769 (6th Cir. 2012)). Second, the in-person signature requirements further the State's interest in verifying the authenticity of the signatures, thereby "decreas[ing] the odds that fraud will corrupt Ohio's election process." (Appellee Br. at p. 36). Third, the State argues that enforcement of the deadlines for submitting petitions ensures that election officials have time to verify the signatures, that any necessary judicial review can proceed, and that ballots can be printed in time to send to military and overseas voters. Plaintiffs do not meaningfully dispute these interests, which—as we observed in *Thompson*—are legitimate. 959 F.3d at 811.

### D.      The Constitutional Validity of the Restrictions

"At the third step of *Anderson-Burdick* we assess whether the State's restrictions are constitutionally valid given the strength of its proffered interests." *Schmitt*, 933 F.3d at 641. Under *Thompson*, election administration interests identical to those Ohio proffers here "outweigh the intermediate burden those regulations place on Plaintiffs." 959 F.3d at 811. Plaintiffs therefore do not state a claim upon which we can grant relief. Fed. R. Civ. P. 12(b)(6).

### III.  CONCLUSION

We affirm the district court's order dismissing this case.