**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State ex rel. Stevens v. Fairfield Cty. Bd. of Elections,* Slip Opinion No. 2018-Ohio-1151.]**

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2018-OHIO-1151

THE STATE EX REL. STEVENS *v.* FAIRFIELD COUNTY BOARD OF ELECTIONS.

**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State ex rel. Stevens v. Fairfield Cty. Bd. of Elections,* Slip Opinion No. 2018-Ohio-1151.]**

*Mandamus—Elections—R.C. 3513.05 and 3517.03—County board of elections abused its discretion in refusing to certify relator's name for placement on the May 2018 primary-election ballot—Writ granted.*

(No. 2018-0360—Submitted March 22, 2018—Decided March 29, 2018.)

IN MANDAMUS.

————————————

**Per Curiam.**

{¶ 1} In this expedited election case, relator, Jason Stevens, seeks a writ of mandamus to compel respondent, the Fairfield County Board of Elections, to issue a certificate of nomination to certify Stevens's name for placement on the May 8, 2018 primary-election ballot as a candidate for election to the Ohio Democratic Party State Central Committee. For the reasons set forth below, we grant the writ.

## Background

{¶ 2} Stevens filed a petition to appear on the May 8 primary ballot as a candidate for the Ohio Democratic Party State Central Committee, as Member for the 20th Senate District. On February 15, 2018, the board voted three to zero, with one abstention, to deny Stevens access to the ballot because, according to the meeting minutes, "his voting history did not show he was a member of the Democratic Party."

{¶ 3} The board sent Stevens a letter, which was dated February 22 but was not received by Stevens until February 26, informing him of its decision. The letter explained the board's decision by stating:

> [Y]ou are not affiliated with a political party. Because of your unaffiliated status you are unable to run as a candidate for the partisan position of State Central Committee Member.

{¶ 4} On February 27, Stevens asked the board to reconsider its decision. The board indicated that it would consider the request at its March 5 meeting. On that date, Stevens's counsel presented two affidavits to the board, one by Stevens and the other by N. Zachary West, general counsel of the Ohio Democratic Party, and, according to the minutes from that meeting, "explained why [Stevens and West] felt that Mr. Stevens was a Democratic Party member." The board adjourned without taking any action on the request for reconsideration.

{¶ 5} On March 8, 2018, Stevens filed this complaint for a writ of mandamus against the board of elections. Because this case was filed within 90 days of the May 8 election, the parties submitted briefs in accordance with the accelerated schedule for expedited elections cases in Sup.Ct.Prac.R. 12.08.

**Analysis**

A. *Standard of review*

**{¶ 6}** To be entitled to a writ of mandamus, a relator must establish, by clear and convincing evidence, (1) a clear legal right to the requested relief, (2) a clear legal duty on the part of the respondent to provide it, and (3) the lack of an adequate remedy in the ordinary course of the law. *State ex rel. Waters v. Spaeth*, 131 Ohio St.3d 55, 2012-Ohio-69, 960 N.E.2d 452, ¶ 6, 13. Given that the May 2018 election is imminent, Stevens does not have an adequate remedy in the ordinary course of the law. *See State ex rel. Stewart v. Clinton Cty. Bd. of Elections*, 124 Ohio St.3d 584, 2010-Ohio-1176, 925 N.E.2d 601, ¶ 17 (holding that the relator had no adequate remedy at law because the election was imminent at the time the county elections board denied the relator's protest); *State ex rel. Finkbeiner v. Lucas Cty. Bd. of Elections*, 122 Ohio St.3d 462, 2009-Ohio-3657, 912 N.E.2d 573, ¶ 18 (same).

**{¶ 7}** When reviewing the decision of a county board of elections, the standard is whether the board engaged in fraud or corruption, abused its discretion, or acted in clear disregard of applicable legal provisions. *State ex rel. Holwadel v. Hamilton Cty. Bd. of Elections*, 144 Ohio St.3d 579, 2015-Ohio-5306, 45 N.E.3d 994, ¶ 29.

B. *Laches*

**{¶ 8}** We first address the board's contention that this suit is barred by the doctrine of laches. Laches may bar relief in an election-related matter if the person seeking relief fails to act with the " 'utmost diligence.' " *State ex rel. Monroe v. Mahoning Cty. Bd. of Elections*, 137 Ohio St.3d 62, 2013-Ohio-4490, 997 N.E.2d 524, ¶ 30, quoting *State ex rel. Fuller v. Medina Cty. Bd. of Elections*, 97 Ohio St.3d 221, 2002-Ohio-5922, 778 N.E.2d 37, ¶ 7. A laches defense "rarely prevails in election cases." *State ex rel. Duclos v. Hamilton Cty. Bd. of Elections*, 145 Ohio St.3d 254, 2016-Ohio-367, 48 N.E.3d 543, ¶ 8.

**{¶ 9}** The board contends that Stevens failed to act with the requisite diligence because he received notice of the board's decision on February 26 (by his own admission) but did not file suit until March 8, ten days later. In the interim, he sought reconsideration from the board. The board asserts: "As there is no statutory requirement for the [board] to hear [Stevens's] request for reconsideration, [Stevens] acted with unreasonable delay by filing this Complaint eleven [sic, ten] days after being notified by the [board] of its denial of his petition."

**{¶ 10}** To the contrary, we have more than once observed that any delay in filing an expedited election case that is attributable to efforts to seek reconsideration from the board of elections, and thereby obviate the need for litigation, is not unreasonable. In *State ex rel. Brinda v. Lorain Cty. Bd. of Elections*, 115 Ohio St.3d 299, 2007-Ohio-5228, 874 N.E.2d 1205, the board of elections asserted a laches defense based on the passage of 21 days between the day the board rejected the nominating petition and the day Brinda filed her mandamus action. We excused the first 9 days of that period, finding that those days "might be reasonably attributable to Brinda's attempts to persuade the board to reconsider its decision and her attempts to secure legal counsel," and analyzed the laches defense with regard to the remaining 12 days. *Id*. at ¶ 10; *see also State ex rel. Owens v. Brunner*, 125 Ohio St.3d 130, 2010-Ohio-1374, 926 N.E.2d 617, ¶ 18 (holding that "at least some of Owens's delay in filing [his mandamus] action was reasonable" because "[p]art of the ten-day delay resulted from Owens's diligent efforts to obtain records related to the board's review of his part-petitions and to request the board to review them again").

**{¶ 11}** The board has submitted evidence intended to prove that certifying Stevens's name to the ballot at this late date will "impose great costs and delays on the seven counties that comprise the Ohio 20th Senate District if those counties are forced to reprint ballots so close to the May 8th primary." However, any financial cost to the county boards is irrelevant if Stevens acted with reasonable diligence.

{¶ 12} We hold that Stevens's suit is not barred by laches.

C. *The eligibility requirements for a central-committee member*

{¶ 13} Under the Revised Code, to be a member of a party's controlling committee, a person (1) must be "a resident and qualified elector of the district, ward, or precinct that the member is elected to represent," R.C. 3517.02, and (2) must be a member of the party, R.C. 3517.03. The Revised Code does not explicitly define the phrase "member of the party" in the context of central-committee membership. However, with respect to candidacy petitions, the Revised Code provides:

> For purposes of signing or circulating a petition of candidacy for party nomination or election, an elector is considered to be a member of a political party if the elector voted in that party's primary election within the preceding two calendar years, or if the elector did not vote in any other party's primary election within the preceding two calendar years.

R.C. 3513.05, paragraph 7.

{¶ 14} The affidavit Stevens submitted to the board attested that he "previously voted in multiple Democratic Party primary elections in Muskingum County, though [he] did not vote in a primary election in 2016 or 2017."[1] In fact, according to the director of the board, "the State of Ohio Voter Query System" indicates that Stevens "ha[s] not voted in a partisan Primary since 2008." Based on these facts, Stevens contends that he qualifies as a member of the Democratic Party under R.C. 3513.05, and thus under R.C. 3517.03, because he satisfies one of the

---

[1] In 2017, there was no partisan primary election in Stevens's precinct.

two terms in R.C. 3513.05: he "did not vote in any other party's primary election within the preceding two calendar years."

{¶ 15} The board agrees that R.C. 3513.05 sets out the correct standard for determining party membership under R.C. 3517.03, but rejects Stevens's argument that the two clauses in the statute should be read disjunctively. Despite the use of the word "or" in the statute, the board maintains that the intent of the statute is that an elector satisfy both prongs in order to claim party membership.

{¶ 16} The Revised Code does provide for the possibility of substituting the word "and" in a statute for the word "or":

> As used in the Revised Code, unless the context otherwise requires:
>
> * * *
>
> (F) "And" may be read "or," and "or" may be read "and" if the sense requires it.

R.C. 1.02. The rule in R.C. 1.02(F) "operates to avoid inadvertent consequences when logic demands." *State v. Jones*, 116 Ohio St.3d 211, 2007-Ohio-6093, 877 N.E.2d 677, ¶ 16. The board contends that the "or" in R.C. 3513.05 should be read as "and" and that because Stevens has not voted in a Democratic Party primary election within the last two calendar years, he does not satisfy the first prong under R.C. 3513.05 and, thus, he is not a member of the party.

{¶ 17} When construing the language of a statute, we begin by determining the intent of the General Assembly. *State ex rel. Repeal the Lorain Cty. Permissive Sales Tax Commt. v. Lorain Cty. Bd. of Elections*, 151 Ohio St.3d 247, 2017-Ohio-7648, 87 N.E.3d 1234, ¶ 14. The intent of the General Assembly "is primarily determined from the language of the statute itself." *Stewart v. Trumbull Cty. Bd. of Elections*, 34 Ohio St.2d 129, 130, 296 N.E.2d 676 (1973). When the statute is

6

unambiguous, the court must apply it as written. *State ex rel. Ohio Presbyterian Retirement Servs., Inc. v. Indus. Comm.*, 151 Ohio St.3d 92, 2017-Ohio-7577, 86 N.E.3d 294, ¶ 19. The language of R.C. 3513.05 is not ambiguous: an elector is a member of a particular political party if he or she voted in that party's primary election within the preceding two calendar years *or* if he or she did not vote in any other party's primary election within the preceding two calendar years.

{¶ 18} Moreover, to be consistent with this court's prior application of R.C. 1.02(F), the "or" in R.C. 3513.05 must be read literally:

> "[A]n examination of the authorities shows that under certain conditions the word 'or' in a legislative enactment can be construed to read 'and,' and that the word 'and' can likewise be construed to read 'or.' The word 'and' or 'or' will not be given its literal meaning where such meaning would do violence to the evident intent and purpose of the lawmakers and the other meaning would give effect to such intent. Contrariwise, the words should not be treated as interchangeable when their accurate and literal meaning does not render the sense dubious, and the fact that the terms of the legislative enactment when given their literal meaning may prove onerous in some instances is not sufficient to warrant a court in arbitrarily changing plain and unambiguous language employed by the legislative body in the enactment."

*In re Adoption of McDermitt*, 63 Ohio St.2d 301, 304, 408 N.E.2d 680 (1980), quoting *In re Estate of Marrs*, 158 Ohio St. 95, 99, 107 N.E.2d 148 (1952).

{¶ 19} The board, in attempting to invoke R.C. 1.02(F) to change "or" to "and" in R.C. 3513.05, does not explain why using the literal meaning of "or" " 'would do violence to the evident intent and purpose of the lawmakers and the

other meaning would give effect to such intent,' " *McDermitt* at 304, quoting *Marrs* at 99. Instead, the board offers a hypothetical scenario that might result from reading the statute literally:

> Elector votes in the primary of Party A in 2016. Elector then votes in the primary of Party B in 2017. Yet, Elector could still claim to be a member of Party A, because she voted in Party A's primary election within the preceding two calendar years (i.e., 2016). Indeed, the elector could also claim to be a member of Party B for the same reason. This scenario is only prevented by reading the requirements of party membership in the conjunctive * * *.

But this is not the "absurd" result the board believes it to be.

{¶ 20} Party affiliation in Ohio is purely a matter of self-identification, and that self-identification is subject to change.

> [P]arty affiliation or membership is "that which [the voter] desires it to be from time to time." * * * Essentially, being "registered" as a Republican or Democrat means nothing more than voting in that party's primary, because the local boards of elections keep records of that information.

(Brackets sic.) *State ex rel. Coughlin v. Summit Cty. Bd. of Elections*, 136 Ohio St.3d 371, 2013-Ohio-3867, 995 N.E.2d 1194, ¶ 28, fn. 2, quoting *State ex rel. Young v. Gasser*, 21 Ohio St.2d 253, 257, 257 N.E.2d 389 (1970). Indeed, with respect to incumbents holding offices for which candidates are nominated in partisan primary elections, the General Assembly expressly preserves their right to change parties while in office; that is, the incumbents can seek reelection under the

8

banner of one party notwithstanding the fact that they cast primary-election ballots for the opposing party in a primary election within the preceding two calendar years. *See* R.C. 3513.19(A)(3)(a) and 3513.191(C)(1).

{¶ 21} The board suggests that the secretary of state has adopted a conjunctive reading of R.C. 3513.05. In Ohio Secretary of State Directive 2017-12, Secretary Jon Husted instructed county election officials:

> For purposes of re-calculating a voter's party affiliation in the county voter registration system, each board of elections must program its county voter registration system to reflect party affiliation using the examples that follow:
>
> * * *
>
> - Voted R in 2016 primary
>   Voted D or R in 2015 partisan primary
>   *Elector's affiliation is R*

(Italics sic.) Ohio Secretary of State, *Ohio Election Official Manual*, (Aug. 8, 2017), page 3-73, https://www.sos.state.oh.us/globalassets/elections/directives /2017/dir2017-12_eom_ch_03.pdf (accessed Mar. 26, 2018). According to the board, "[t]he only way the Secretary's example could hold true is by interpreting the two clauses of the definition of party membership as requirements." But the board is plainly incorrect: if the secretary had adopted the board's view that an elector had to satisfy both prongs of R.C. 3513.05 in order to claim party membership, then the correct answer to the secretary's hypothetical scenario would be that this voter has *no* party affiliation and cannot cast a partisan ballot in 2017.

{¶ 22} Based on the plain language of R.C. 3513.05, we hold that Stevens satisfied the statutory requirements to stand for election to the Ohio Democratic

Party State Central Committee. The board abused its discretion and acted in clear disregard of applicable legal provisions when it disallowed his candidacy.

{¶ 23} Based on the foregoing, we grant the requested writ of mandamus.

Writ granted.

O'CONNOR, C.J., and O'DONNELL, KENNEDY, FRENCH, FISCHER, DEWINE, and DEGENARO, JJ., concur.

_____

McTigue & Colombo, L.L.C., Donald J. McTigue, J. Corey Colombo, Derek S. Clinger, and Ben F.C. Wallace, for relator.

R. Kyle Witt, Fairfield County Prosecuting Attorney, and Joshua S. Horacek and Amy Brown Thompson, Assistant Prosecuting Attorneys, for respondent.

_____