**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State ex rel. Guest v. Husted,* Slip Opinion No. 2018-Ohio-3161.]**

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2018-OHIO-3161

THE STATE EX REL. GUEST *v*. HUSTED, SECY., ET AL.

**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State ex rel. Guest v. Husted,* Slip Opinion No. 2018-Ohio-3161.]**

*Elections—Mandamus—Writ of mandamus sought to compel secretary of state and county board of elections to place candidate's name on general-election ballot as independent candidate for common-pleas-court judge—Secretary of state did not abuse his discretion in refusing to place candidate's name on the ballot—Writ denied.*

(No. 2018-0889—Submitted August 2, 2018—Decided August 8, 2018.)

IN MANDAMUS.

_____

**Per Curiam.**

{¶ 1} In this expedited election case, relator, Heaven Guest, seeks a writ of mandamus to compel respondents, Ohio Secretary of State Jon Husted and the Columbiana County Board of Elections, to place her name on the November 6, 2018

ballot as an independent candidate for judge of the Columbiana County Court of Common Pleas. Because Guest has failed to carry her burden to show by clear and convincing evidence that Husted abused his discretion, we deny the writ.

## I. Facts

{¶ 2} On May 7, 2018, Guest filed a nominating petition and statement of candidacy to run as an independent candidate for common-pleas-court judge in the November general election. Before she filed the paperwork to run as an independent candidate, Guest was an active member of the Democratic Party. In fact, she was appointed to the Columbiana County Democratic Party Central Committee in February 2018. She alleges that she resigned from that position and disaffiliated herself from the Democratic Party on April 14, 2018.

{¶ 3} At a regular board-of-elections meeting on May 29, a member of the board moved to reject Guest's nominating petition, arguing that Guest was not eligible to run as an independent candidate because she had not disaffiliated from the Democratic Party at the time she filed her petition. Guest was not present at the meeting. When the motion resulted in a tie vote, the board referred the matter to Husted under R.C. 3501.11(X).

{¶ 4} The board members gave Husted evidence and presented written arguments supporting their views. The members opposing Guest's candidacy argued that she attempted to become an independent candidate only after it appeared that the incumbent judge in Columbiana County—a Republican whom the Democratic Party had not opposed—might not win the primary election. The Republican incumbent did, in fact, lose the primary election on May 8, 2018, and the board members opposing Guest argued that her candidacy is a coordinated, impermissible effort by the Democratic Party to field a candidate in the general election. In support of this theory, the board members opposing Guest pointed to the fact that the majority of the circulators of Guest's part-petitions are Democrats—and that one of the circulators was Nick Barborak, chairman of the Columbiana County Democratic Party. They

also highlighted that Guest's nominating committee consists of her husband and four Democrats.

{¶ 5} In the view of the board members opposing Guest's candidacy, ample evidence shows that she claimed disaffiliation from the Democratic Party in bad faith. They argued that she remained a member of the county Democratic Party central committee at the time of their vote, because the board had no notice of her purported resignation, *see* R.C. 3517.06. They also pointed to Guest's Facebook page, which included numerous photos of her with national and local Democratic figures and statements supportive of Democratic candidates, and to her financial contributions to the campaigns of Democratic candidates in 2018.[1]

{¶ 6} In response, the board members who voted in favor of Guest's candidacy argued that she meets the requirements to serve as a judge, submitted the requisite number of valid signatures with her petition, and demonstrated her independence from any political party by voting "as an independent" in the May 2018 primary election. Included with their submission was a copy of a handwritten letter from Guest to Barborak, the county Democratic Party chairman. The entire letter, dated April 14, 2018, states:

> Mr. Barborak,
>
> I am writing to reject/resign my appointment as a PC.[2] My political views are independent.
>
> I sincerely appreciate the thought and look forward to talking to you again.
>
> Heaven Guest

---

[1] The board members provided evidence of contributions to Democratic candidates made by "Heaven R. DiMartino." Guest does not dispute that she made the contributions.

[2] The parties do not define "PC," but it appears to refer to "Precinct Committeeperson."

**{¶ 7}** Husted received the board's request for a tie-breaking vote on June 1. Following the referral to Husted, the board members who had voted to reject Guest's petition informed Husted that they wanted an opportunity for the board to hold a special meeting so that it could "address a series of substantive questions relating to the veracity and authenticity and truthfulness" of Guest's claim that she had resigned from the county Democratic Party central committee on April 14. Specifically, they wanted to investigate the matter under R.C. 3501.11(J) by issuing subpoenas to Guest and Barborak. The two members who opposed Guest's candidacy attempted to call a special meeting on June 6, but no quorum was reached because the other members, both Democrats, did not attend.

**{¶ 8}** On June 8, Husted voted to reject Guest's petition, finding that she "remains affiliated with the Democratic Party." In reaching his decision, Husted focused on Guest's position on the county Democratic Party central committee, the composition of her nominating committee, the support she has received from members of the Democratic Party, and her support of Democratic candidates.

**{¶ 9}** Guest commenced this action in this court on June 22.

## II. Analysis

### A. *Legal standard*

**{¶ 10}** R.C. 3501.01(I) defines "independent candidate" as "any candidate who claims not to be affiliated with a political party, and whose name has been certified * * * through the filing of a statement of candidacy and nominating petition, as prescribed in section 3513.257 of the Revised Code." R.C. 3513.257 requires an independent candidate to file a statement of candidacy and nominating petition no later than 4:00 p.m. the day before the day of the primary election. This court has accepted the view of the Sixth Circuit Court of Appeals that R.C. 3501.01(I) and 3513.257 require an independent candidate to make her claim of disaffiliation from a political party in good faith. *See State ex rel. Davis v. Summit Cty. Bd. of Elections*,

4

137 Ohio St.3d 222, 2013-Ohio-4616, 998 N.E.2d 1093, ¶ 27, following *Morrison v. Colley*, 467 F.3d 503, 509 (6th Cir.2006).

**{¶ 11}** To prevail on her mandamus claim, Guest must establish a clear legal right to have her name placed on the November ballot, a corresponding clear legal duty of Husted to place her name on the ballot, and the lack of an adequate remedy in the ordinary course of law. *State ex rel. Allen v. Warren Cty. Bd. of Elections*, 115 Ohio St.3d 186, 2007-Ohio-4752, 874 N.E.2d 507, ¶ 8. She must prove her case by clear and convincing evidence. *State ex rel. Orange Twp. Bd. of Trustees v. Delaware Cty. Bd. of Elections*, 135 Ohio St.3d 162, 2013-Ohio-36, 985 N.E.2d 441, ¶ 14.

**{¶ 12}** Given the proximity of the November election, Guest satisfies the third requirement. *State ex rel. Ohio Liberty Council v. Brunner*, 125 Ohio St.3d 315, 2010-Ohio-1845, 928 N.E.2d 410, ¶ 27. To satisfy the first two requirements, Guest must show that Husted "engaged in fraud, corruption, or abuse of discretion, or acted in clear disregard of applicable legal provisions." *Whitman v. Hamilton Cty. Bd. of Elections*, 97 Ohio St.3d 216, 2002-Ohio-5923, 778 N.E.2d 32, ¶ 11. Because Guest makes no allegation of fraud or corruption, she must show that Husted abused his discretion or disregarded the law when he rejected her petition.

*B. Husted's decision*

**{¶ 13}** Husted's conclusion that Guest's claim of disaffiliation from the Democratic Party was not made in good faith was based on four basic findings: (1) that Guest still was a member of the county Democratic Party central committee at the time she submitted her petition, (2) that her nominating committee consisted of her husband and four Democrats, (3) that her candidacy received support from members of the Democratic Party, and (4) that she recently has supported Democratic candidates. Husted addressed each of these findings separately, but he viewed them together in the context of the Republican incumbent judge's primary-election loss and the Democratic Party's failure to field a candidate for the judicial seat. He

concluded that Ohio law does not permit the Democratic Party "a second bite at the apple" after having failed to field its own candidate in the Democratic primary. We agree that this broader context was relevant to Husted's inquiry.

{¶ 14} Guest has not shown by clear and convincing evidence that Husted abused his discretion in finding that she claimed disaffiliation from the Democratic Party in bad faith. We address Husted's findings in turn.

1. Membership on the county central committee

{¶ 15} In his decision, Husted concluded that "Guest remains affiliated with the Democratic Party." He reached that conclusion based on a letter from Barborak to the board stating that Guest is a member of the county Democratic Party central committee. That letter is dated February 27 and was received by the board on March 30. In their briefs, Husted and the board contend that Guest's name was on the central committee's active roster when she claimed to be disaffiliated from the Democratic Party on May 7.

{¶ 16} Ordinarily, there are few affirmative steps an Ohio elector can take to disaffiliate from a political party. "Party affiliation in Ohio is purely a matter of self-identification, and that self-identification is subject to change." *State ex rel. Stevens v. Fairfield Cty. Bd. of Elections*, 152 Ohio St.3d 584, 2018-Ohio-1151, 99 N.E.3d 376, ¶ 20. In *State ex rel. Coughlin v. Summit Cty. Bd. of Elections*, we explained:

A voter cannot register as an independent, except in the negative sense of not voting in partisan primaries or signing partisan nominating petitions. The Revised Code contains no provision for declaring party affiliation when one registers to vote, *State ex rel. Young v. Gasser*, 21 Ohio St.2d 253, 255, 257 N.E.2d 389 (1970), and the registration forms do not contain a space for that information. Rather, party affiliation or membership is "that which [the voter] desires it to be from time to time." *Id.* at 257. Essentially, being

"registered" as a Republican or Democrat means nothing more than voting in that party's primary, because the local boards of elections keep records of that information.

136 Ohio St.3d 371, 2013-Ohio-3867, 995 N.E.2d 1194, ¶ 28, fn. 2. Thus, disaffiliation from a political party largely involves an elector's *inaction*.

{¶ 17} But here, Guest had been appointed to the county Democratic Party central committee. Clearly, resigning from that position was an affirmative step she could—and needed to—take to disaffiliate from the Democratic Party.

{¶ 18} In reaching his decision, Husted acknowledged the handwritten letter by which Guest attempted to resign from her position on the county central committee, but he nevertheless found that she remained on the committee. As an initial matter, we reject Husted's suggestion that Guest's resignation was not effective simply because the board had not received notice of the change under R.C. 3517.06. That statute requires the secretary of a county central committee to file with the county board of elections a list of the names and addresses of the committee's members and to promptly report any changes in the membership. Thus, the secretary of the county Democratic Party central committee—not Guest—was responsible for notifying the board of Guest's resignation. Guest cannot be faulted for not taking steps that were not under her control. *See State ex rel. Morris v. Stark Cty. Bd. of Elections*, 143 Ohio St.3d 507, 2015-Ohio-3659, 39 N.E.3d 1232, ¶ 35-36.

{¶ 19} But we do not conclude that Husted abused his discretion in viewing Guest's letter with suspicion. He first questioned its origin and veracity, noting that a "copy of a document is never the best evidence when there are questions about the original's authenticity." Continuing, he explained that it "would have been useful to receive direct testimony from Ms. Guest on these issues." The record shows that members of the board attempted to conduct a hearing at which these issues could have been addressed, but no hearing was held after the board's Democratic members

failed to attend. Although there is no direct evidence that Guest prevented the hearing from occurring, Husted was not required to ignore the role of the Democratic members in preventing it from occurring or to view their nonattendance in isolation from the larger context in which the Democratic Party had failed to field a candidate. Therefore, he did not abuse his discretion in questioning the letter's authenticity.

{¶ 20} Husted also found the content of the letter to be insufficient, concluding that its language is "ambiguous at best." The letter's two operative sentences state that Guest was "writing to reject/resign [her] appointment as a PC" and that her "political views are independent." She concluded by stating that she "look[ed] forward to talking to [Barborak] again." Husted noted that Guest did not "declare that she wishe[d] to disaffiliate from the Democratic Party" and that "it is possible to have 'independent' political views and still be a member of a political party."

{¶ 21} Resigning from her position on the county Democratic Party central committee was one of the few affirmative steps Guest could take to validate her disaffiliation. If that was her goal, she did not do it well. She did not explain the import of her holding independent views (i.e., that she did not wish to remain a Democrat), or unequivocally state that she meant to leave the party. Indeed, she ended her letter with a statement of hope to be in further communication with the county Democratic Party chairman. The letter contains neither the formality nor the clarity one would expect from someone looking to disaffiliate from a political party. Thus, we cannot conclude that Husted abused his discretion in questioning the letter's effectiveness.

### 2. Composition of Guest's nominating committee

{¶ 22} After addressing Guest's resignation letter, Husted found that "[e]ven assuming that Ms. Guest effectively resigned on April 14, 2018, it is perhaps most disingenuous to the claim of disaffiliation that her petitions, which are dated after the

date of her purported resignation, list as members of her nominating committee the names of her husband and four Democrats." Husted expressed concern that a majority of Guest's nominating committee would have authority to name a replacement candidate if Guest were to withdraw as a candidate. *See* R.C. 3513.31(F). He concluded that "good faith disaffiliation had not taken place, given that she selected a super-majority of Democrats to represent her."

{¶ 23} No statute prevents members of a political party from constituting a majority (or supermajority) of an independent candidate's nominating committee after the candidate has disaffiliated from that party. *See* R.C. 3501.01(I), 3513.257, and 3513.261. Nor will we impose any such rule here. But we do acknowledge, as Husted did, that the inclusion of four Democrats on Guest's nominating committee is relevant to the determination whether her claim of disaffiliation from the political party was made in good faith. Thus, Husted did not abuse his discretion in considering that evidence.

3. Support from members of the Democratic Party

{¶ 24} Husted also relied on the fact that Guest accepted campaign support from members of the Democratic Party. Evidence shows that Democrats, including the county party chairman, circulated a majority of the part-petitions for Guest's candidacy. According to the board, of the 11 electors who circulated part-petitions for Guest's candidacy, 7 (counting Guest) are Democrats and they collected nearly 78 percent of the signatures. Husted also referenced a news article reporting that the county party chairman introduced Guest at the Columbiana County courthouse and accompanied her at an event in Columbiana County on May 10.

{¶ 25} Husted's concern that a majority of the individuals who circulated part-petitions for Guest's candidacy were Democrats is similar to his concern about the composition of her nominating committee: Although there is no rule forbidding their circulating the part-petitions, the fact that they did is relevant because it shows significant support of her candidacy by local Democrats, including Democratic Party

leadership. The same can be said of Barborak's support of Guest's candidacy, as reported in the above-mentioned news article. Accordingly, Guest has not shown that Husted abused his discretion in assigning weight to this evidence.

### 4. Guest's support of Democratic candidates

{¶ 26} Husted also found that Guest's cash donation to a Democratic candidate within days of her purported disaffiliation showed that her claim of disaffiliation from the Democratic Party was made in bad faith. In the same vein, Husted and the board argue in their briefs that the contents of Guest's Facebook page demonstrate her continued affiliation with the Democratic Party.

{¶ 27} When he made his decision, Husted had evidence that Guest had contributed to the campaigns of Democratic candidates this year on January 25 ($35), March 1 ($50), and April 9 ($100)—all before she claimed to be disaffiliated from the Democratic Party when she filed her petition on May 7.[3] In *Davis*, we recognized that financial contributions to a partisan candidate's campaign may be relevant to the question whether an independent candidate disaffiliated from a political party in good faith. 137 Ohio St.3d 222, 2013-Ohio-4616, 998 N.E.2d 1093, at ¶ 24-25. But we gave "little weight" to Davis's donations because "there is no necessary correlation between donations and political affiliation" and Davis made the donations before she filed her declaration of candidacy. *Id*. at ¶ 25. The same considerations cause us to accord little weight to Guest's donations. But our conclusion does not undermine Husted's decision, because he only briefly mentioned Guest's financial contributions to a Democratic candidate and nothing suggests that he afforded the evidence significant weight.

---

[3] The board has presented us with new evidence that Guest contributed $25 to the campaign of a candidate for state representative on June 2. Because evidence of that contribution was not presented to the board or to Husted, we do not consider it in determining whether Husted abused his discretion. *See State ex rel. Tam O'Shanter Co. v. Stark Cty. Bd. of Elections*, 151 Ohio St.3d 134, 2017-Ohio-8167, 86 N.E.3d 332, ¶ 11 (explaining that evidence that was not presented to a board of elections is not relevant to whether the board abused its discretion or clearly disregarded applicable law).

**{¶ 28}** As for Guest's Facebook page, Husted and the board try to analogize this case to *Jolivette v. Husted*, 694 F.3d 760 (6th Cir.2012), a case in which the putative independent candidate's Facebook page contained posts that undermined his disaffiliation claim, *id.* at 767-768. *Jolivette* is distinguishable because Jolivette's Facebook posts included explicit statements about *his own* membership in Republican organizations and his campaign website indicated that support for *his candidacy* was a "Vote for Strong Republican Leadership," *id.* The evidence from Guest's Facebook page was posted April 9, 2018, or earlier, and many of the posts were made in 2016. Unlike Jolivette, there is no evidence that Guest made representations related to *her* party affiliation on Facebook, either before or after she claimed to have disaffiliated from the Democratic Party.

### III. Conclusion

**{¶ 29}** After reviewing the findings upon which Husted based his decision, analyzing those findings in context and as a whole, and affording them the appropriate weight, we find that Guest has not shown by clear and convincing evidence that Husted abused his discretion by refusing to place her name on the ballot, and we deny the writ accordingly.

Writ denied.

O'CONNOR, C.J., and FRENCH, FISCHER, and DEWINE, JJ., concur.

O'DONNELL, J., concurs in judgment only.

KENNEDY and DEGENARO, JJ., not participating.

_____

Warner Mendenhall and Logan Trombley, for relator.

Mike DeWine, Attorney General, and Renata Y. Staff and Halli Brownfield Watson, Assistant Attorneys General, for respondent Ohio Secretary of State Jon Husted.

Fishel, Downey, Albrecht & Riepenhoff, L.L.P., Daniel T. Downey, Melanie J. Williamson, and Angelica M. Jarmusz, for respondent Columbiana County Board of Elections.

_____