**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State ex rel. Law v. Trumbull Cty. Bd. of Elections,* Slip Opinion No. 2019-Ohio-3724.]**

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports.  Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

**SLIP OPINION NO. 2019-OHIO-3724**

**THE STATE EX REL. LAW *v*. TRUMBULL COUNTY BOARD OF ELECTIONS.**

**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State ex rel. Law v. Trumbull Cty. Bd. of Elections,* Slip Opinion No. 2019-Ohio-3724.]**

*Elections—Independent candidates—Mandamus—Prohibition—Writ of mandamus, writ of prohibition, or both, sought to compel board of elections to recertify relator as candidate on the November 2019 ballot—Proper inquiry for disaffiliation is whether candidate's statement of nonaffiliation was made in good faith—Protestor must establish by clear and convincing evidence that candidate's statement was not made in good faith—Claim for a writ reinstating a candidate to a ballot lies in mandamus—Writ of mandamus granted—Writ of prohibition denied.*

(No. 2019-1162—Submitted September 11, 2019—Decided September 16, 2019.)

IN MANDAMUS and PROHIBITION.

_____

**Per Curiam.**

{¶ 1} Relator, Randy Law, asks this court for a writ of mandamus, a writ of prohibition, or both, ordering respondent, the Trumbull County Board of Elections, to recertify his candidacy to the November 2019 ballot as an independent candidate for mayor of Warren. The board opposes Law's request, arguing that it did not abuse its discretion by concluding that Law failed to claim disaffiliation from the Republican Party in good faith. We grant Law a writ of mandamus and deny his request for a writ of prohibition.

## I. FACTUAL AND PROCEDURAL BACKGROUND

{¶ 2} On May 6, 2019, Law submitted his petition to run as an independent candidate for mayor of Warren. The petition was timely filed and contained an adequate number of signatures. On July 2, the board certified Law's candidacy to the November 2019 ballot.

{¶ 3} On July 17, Daniel B. Letson filed a protest against Law's candidacy, asserting that Law was affiliated with the Republican Party and therefore could not run as an independent candidate. On August 12, the board held a hearing at which it accepted documentary evidence and heard Law's sworn testimony. The evidence established the following relevant facts.

{¶ 4} Law has a long—though not unbroken—history of affiliation with the Republican Party. In 2009, he voted in the Democratic Party primary election and in 2010, he voted in a nonpartisan primary election. In more recent years, however, Law has consistently voted in Republican Party primary elections. The last time he did so was in 2018. He did not vote in any party's primary election in 2019. In 2018, he ran for office as a Republican candidate for state representative. And in

2018, he was elected to be a member of the Trumbull County Republican Party Central Committee.[1]

{¶ 5} At some point, "a little more than 30 days" before he filed his petition to run as independent candidate for mayor, Law attempted to change the Facebook page he had used for his 2018 Republican state-representative campaign into a page for his independent mayoral campaign. He was unable to change the name of the page or to delete it, but he was able to change the political affiliation listed on the page. Law explained that while the page for the defunct 2018 campaign still existed as of the date of the hearing, it stated that Law was an independent. Law also created a new Facebook page for his mayoral campaign, which also states that he is an independent. His personal Facebook page does not state any political affiliation.

{¶ 6} On April 13, 2019, Law sent a letter to the Trumbull County Republican Party and to the board, resigning his position as a member of the Trumbull County Republican Party Central Committee. The body of the letter said, "Please be notified of my resignation as Trumbull County Republican Party Central Committee member from Warren 1-G as of the date of this letter." Both the party and the board received the letter; at the August 12 hearing, Law presented a copy that had been time-stamped by the board.

{¶ 7} On April 17, Law completed the statements of candidacy on his part-petitions, which were circulated for his mayoral campaign in late April and early May and filed on May 6.[2] When he submitted his petition, the board provided Law

---

1. Law also acknowledges in his merit brief that he served as a Republican in the Ohio House of Representatives nearly 15 years ago and that he was chairman of the Trumbull County Republican Party from 2014 to 2017. However, no evidence of those facts was adduced at the hearing.
2. Law states in his merit brief that six individuals circulated his part-petitions: Law himself, two registered Republicans, and three registered Democrats. He also states that 34 percent of the valid signatures on his petition were from registered Republicans, 24 percent were from registered Democrats, and 30 percent were from electors not registered with either party. However, the party affiliations of the circulators and signers are not apparent from the face of the part-petitions, and Law submitted no additional evidence on that point to the board or this court.

with paperwork to file a designation of treasurer for his campaign account. Law testified that the board customarily provides this paperwork to candidates when they file their petitions and asks them to return it within ten days because on the filing deadline, "everybody's busy. You just bring it back in." Law's prior designation-of-treasurer form for his 2018 state-representative campaign, which remained on file with the board, designated Law as a Republican. Within ten days after he filed his mayoral-campaign petition, Law filed the paperwork that the board had provided him to update his treasurer information, this time designating himself as an independent.

**{¶ 8}** After Law filed his petition, the Warren Tribune Chronicle published an article about Law's candidacy. The article stated, " '*Running for the mayor's seat was a decision I made after people came to me and asked if I would step up*' Law said. '*It was after the deadline to compete in the primary election.*' " (Italics sic.) The article also stated:

> Law said he does not believe that party politics are as important on the local level as it is on statewide and federal levels.
>
> \* \* \*
>
> Although his background has been in the Republican Party, Law expects his campaign to be very inclusive, drawing people who are known and unknown from both parties.
>
> "*People will be surprised with the level of nonpartisan support we will be drawing from,*" Law said. "*This will not be an 'R' versus 'D' campaign.*" \* \* \*
>
> Law emphasized he has worked well with members of both parties over the years.

4

(Italics sic.)

{¶ 9} At the August 12 protest hearing, the board chairman asked Law to "clearly state to the Board what is or was your motivation to disaffiliate from the Republican party to become an Independent." Before Law could answer, Law's counsel interjected, "it's not a matter of why did you do it; it's did you do it." The board chairman reiterated the question, stating, "I just want to clearly understand Mr. Law's motivation for disaffiliating himself from the Republican party and choosing to become an Independent." Law answered, "It's because I wanted to run as an I. Independent for mayor. So I also knew the steps I needed to take. And that was the motivation; I was running as an Independent."

{¶ 10} The board chairman defined the "fundamental question at hand regarding this protest" as "has Mr. Law disaffiliated from the Republican party in good faith." The board concluded, by a three-to-one vote, that Law had not "disaffiliated himself from the Republican party in good faith, and must be removed from the ballot." The board chairman stated:

> Based on many, many, many factors, there was not a single factor that presented the preponderance of weight for one way or another. His past party affiliations, previous offices held, most recently, I mean, precinct committee people, state rep in terms of running for that office, state central committee, the timing of everything, and the time line, the petitions, the signers, the circulators, the declaration of treasurer went into account. The Tribune article about the—it was after the deadline, and in order to compete, you know, for the mayor's race, all those went into consideration.

And what also went into consideration was what was not presented in terms of the disaffiliation. Why are you wanting to run as an Independent now? And that was an opportunity to present your position as—and support your position of disaffiliation, and it was not compelling.

Now, none of those things in their—taken on a singular basis was the reason why we came to our decision, but everything in totality. So that is our position of this Board. That is our position of this Board.

**{¶ 11}** Law filed this action on August 19, seeking a writ of mandamus, a writ of prohibition, or both, ordering the board to recertify his candidacy to the ballot.

## II. ANALYSIS

### A. *Mandamus Standard*

**{¶ 12}** Law is entitled to a writ of mandamus if he establishes by clear and convincing evidence that (1) he has a clear legal right to have his name placed on the ballot, (2) the board has a clear legal duty to place his name on the ballot, and (3) he lacks an adequate remedy in the ordinary course of the law. *State ex rel. Davis v. Summit Cty. Bd. of Elections*, 137 Ohio St.3d 222, 2013-Ohio-4616, 998 N.E.2d 1093, ¶ 12. Because of the proximity of the November election, Law lacks an adequate remedy outside this proceeding. *See State ex rel. Finkbeiner v. Lucas Cty. Bd. of Elections*, 122 Ohio St.3d 462, 2009-Ohio-3657, 912 N.E.2d 573, ¶ 18.

**{¶ 13}** With respect to the remaining elements, we look to whether the board has "engaged in fraud, corruption, or abuse of discretion, or acted in clear disregard of applicable legal provisions." *Whitman v. Hamilton Cty. Bd. of Elections*, 97 Ohio St.3d 216, 2002-Ohio-5923, 778 N.E.2d 32, ¶ 11. Law does not allege fraud or corruption, so the question is whether the board abused its discretion

or clearly disregarded applicable law. A board abuses its discretion when it acts in an unreasonable, arbitrary, or unconscionable fashion. *State ex rel. McCann v. Delaware Cty. Bd. of Elections*, 155 Ohio St.3d 14, 2018-Ohio-3342, 118 N.E.3d 224, ¶ 12.

### B. Disaffiliation

**{¶ 14}** An "independent candidate" is "any candidate who claims not to be affiliated with a political party, and whose name has been certified * * * through the filing of a statement of candidacy and nominating petition, as prescribed in section 3513.257 of the Revised Code." R.C. 3501.01(I). "Implicit in the submission of these documents is the candidate's declaration that he or she is independent; *that declaration must be made in good faith*." (Emphasis added.) *State ex rel. Morris v. Stark Cty. Bd. of Elections*, 143 Ohio St.3d 507, 2015-Ohio-3659, 39 N.E.3d 1232, ¶ 29.

**{¶ 15}** "Party affiliation in Ohio is purely a matter of self-identification, and that self-identification is subject to change." *State ex rel. Stevens v. Fairfield Cty. Bd. of Elections*, 152 Ohio St.3d 584, 2018-Ohio-1151, 99 N.E.3d 376, ¶ 20. "[B]eing 'registered' as a Republican or Democrat means nothing more than voting in that party's primary, because the local boards of elections keep records of that information." *State ex rel. Coughlin v. Summit Cty. Bd. of Elections*, 136 Ohio St.3d 371, 2013-Ohio-3867, 995 N.E.2d 1194, ¶ 28, fn. 2. But "[a] voter cannot register as an independent, except in the negative sense of not voting in partisan primaries or signing partisan nominating petitions." *Id.*

**{¶ 16}** While "disaffiliation from a political party largely involves an elector's *inaction*," (emphasis sic), *State ex rel. Guest v. Husted*, 153 Ohio St.3d 630, 2018-Ohio-3161, 109 N.E.3d 1229, ¶ 16, there may be affirmative steps— such as resigning from a party's central committee—that the candidate needs to take in order to disaffiliate, *id.* at ¶ 17. However, to run as an independent, "the requirement * * * is that a candidate must *declare her lack of affiliation in good*

*faith*, not that she take affirmative action to disaffiliate *in order to prove her good faith*." (Emphasis added.) *Davis*, 137 Ohio St.3d 222, 2013-Ohio-4616, 998 N.E.2d 1093, at ¶ 28.

{¶ 17} We conclude that the board abused its discretion by (1) fundamentally misconstruing the relevant inquiry when it required Law to take affirmative action to demonstrate his good faith and (2) removing Law from the ballot based on evidence that was not probative of bad faith.

*1. The board abused its discretion by misconstruing the relevant inquiry*

{¶ 18} In *Davis*, we held that a board of elections abused its discretion when it "fundamentally misconstrued the relevant inquiry" by determining that the independent candidate "did not make a good faith attempt to disaffiliate from the Democratic Party." *Id*. The proper inquiry is whether the candidate's statement of nonaffiliation had been made in good faith. *Id*. While these standards sound similar, there is a key distinction: the correct standard looks to whether the *protestor* has established that the candidate's *statement* was made in bad faith, for example, by showing a continuing connection to a political party; the incorrect standard faults the *candidate* for failing to do enough to convince the board that his *disaffiliation* was undertaken in good faith.

{¶ 19} Here, as in *Davis*, the board fundamentally misconstrued the appropriate inquiry. At the protest hearing, the burden was on the protestor to establish by clear and convincing evidence that Law's declaration was not made in good faith. *Morris*, 143 Ohio St.3d 507, 2015-Ohio-3659, 39 N.E.3d 1232, at ¶ 19. Certainly, in preparation to disaffiliate from the Republican Party and run for office as an independent candidate, Law was required to do that which, if left undone, would have demonstrated that he claimed disaffiliation in bad faith. *See Guest*, 153 Ohio St.3d 630, 2018-Ohio-3161, 109 N.E.3d 1229, at ¶ 16-17. But Law was not required to take affirmative action merely to demonstrate that he was disaffiliating in good faith. The board demanded more of Law than it should have.

8

{¶ 20} At the hearing, the protestor acknowledged, "I wouldn't accuse Mr. Law of bad faith. Bad faith means you're taking some action in doing something wrong." Rather, the protestor explained, "I believe this lack of good faith is really his inattention to the details necessary to sit and register as an Independent candidate." The protestor later stated, incorrectly, "You have to establish that you're disaffiliating with your conduct." The board then defined the issue before it as "has Mr. Law disaffiliated from the Republican party in good faith." This statement implies that the board's focus was on whether Law, not the protestor, had measured up.

{¶ 21} Indeed, the board asked Law to provide a reason why he chose to leave the Republican Party, and it based its decision in part on his failure to state a reason that the board found compelling. But Law was not required to have a compelling reason for disaffiliating, as long as his statement that he had done so was accurate and made in good faith. *See*, *e.g.*, *State ex rel. Monroe v. Mahoning Cty. Bd. of Elections*, 137 Ohio St.3d 62, 2013-Ohio-4490, 997 N.E.2d 524, ¶ 27 ("remark that it was 'more strategic' to run as an independent is not disqualifying"; "evidence that [a] candidate acted on a calculation that he would have a better chance of winning as an independent fails to rise to level of clear and convincing evidence that [the] claim of disaffiliation was a sham"). And the burden of proof at the hearing was on the protestor, not Law. *Morris* at ¶ 19. By requiring Law to establish a reason for disaffiliating that was compelling in the eyes of the board, the board misconstrued the relevant inquiry and abused its discretion.

2. *The board abused its discretion by removing Law from the ballot based on evidence that was not probative of bad faith*

{¶ 22} Law took many steps to remove any link between himself and the Republican Party, with the express goal of being able to make his statement of disaffiliation in good faith. *See Guest*, 153 Ohio St.3d 630, 2018-Ohio-3161, 109 N.E.3d 1229, at ¶ 16-17. The question before the board was whether the protestor

had met his burden of establishing by clear and convincing evidence that Law's declaration of nonaffiliation was not made in good faith. *Morris*, 143 Ohio St.3d 507, 2015-Ohio-3659, 39 N.E.3d 1232, at ¶ 19.

{¶ 23} The board chairman stated that the board's decision was based on "many, many, many factors." However, in addition to Law's failure to articulate a "compelling" reason for disaffiliating, which as discussed above, is not probative of bad faith, the board has chosen to argue that Law's statement of nonaffiliation was not made in good faith based on four factors: (1) Law's letter resigning his position as a member of the Trumbull County Republican Party Central Committee, (2) Law's designation-of-treasurer form, (3) Law's statement to the Tribune Chronicle, and (4) Law's extensive prior history as a member of the Republican party. We conclude that because this evidence was not probative of a nonaffiliation declaration made in bad faith, the board's removal of Law from the ballot based on this evidence was an abuse of discretion. *See*, *e.g.*, *Davis*, 137 Ohio St.3d 222, 2013-Ohio-4616, 998 N.E.2d 1093, at ¶ 27 ("The board abused its discretion because it lacked sufficient evidence that [the] declaration was a sham or made in bad faith").

### a. The resignation letter

{¶ 24} Resigning from a county party's central committee is something that an individual must do to run as an independent candidate. *Guest* at ¶ 17. In *Guest*, this court found that the candidate's resignation letter supported a conclusion that her statement of disaffiliation was not made in good faith because the letter was of questionable authenticity, contained ambiguous language, was lacking in formality and clarity, and expressed a desire to be in further contact with the party chairman. *Id*. at ¶ 18-20. By contrast, Law's letter suffers from none of those flaws. Instead, the letter did what it was required to do: clearly and unambiguously resign Law's position on the central committee.

**{¶ 25}** The board argues that Law's resignation letter supports a finding that Law's statement of nonaffiliation was a sham because the letter did not state that he was resigning from the Republican Party, only from his position on the central committee. But party membership in Ohio is determined primarily by an elector's participation in partisan primary elections, not by correspondence with the party. *See Guest*, 153 Ohio St.3d 630, 2018-Ohio-3161, 109 N.E.3d 1229, at ¶ 16. In *Guest*, we noted the secretary of state's observation that the candidate's letter did not state that she wished to disaffiliate from the Democratic Party. *Id*. at 20-21. But we did so in the context of attempting to determine what import to give the candidate's statement in her letter that her political views were independent. *Id*. We did not state that the candidate was required to resign from the *party itself* in her letter. *Id*.

**{¶ 26}** As we stated in *Davis*, contemplating a situation in which a candidate has been a member of a party but has never held a party-governance position, "the declaration of disaffiliation [i.e., filing an independent statement of candidacy] can, in some circumstances, be sufficient affirmative action" to disaffiliate from a party. *Davis*, 137 Ohio St.3d 222, 2013-Ohio-4616, 998 N.E.2d 1093, at ¶ 28. If this is true, the fact that Law's letter resigning his central-committee position did not also purport to resign from the Republican Party itself does not demonstrate that his declaration of nonaffiliation was a sham. Said differently, Law's declaration of nonaffiliation, implied by the filing of his independent statement of candidacy, *was* his resignation from the Republican Party. The fact that his central-committee resignation letter did not purport to resign from the party is therefore not probative of a bad-faith declaration of nonaffiliation.

### b. The treasurer form

**{¶ 27}** Law filed a designation-of-treasurer form identifying himself as an independent within ten days after he filed his petition. The board argues that Law's failure to file the form sooner and leaving the old form from his defunct state-

representative campaign identifying him as a Republican on file within the gap of time between filing his petition and his new designation-of-treasurer form, show that Law's declaration of nonaffiliation was a sham. For this premise, the board relies on *Jolivette v. Husted*, 694 F.3d 760 (6th Cir.2012), in which the Sixth Circuit Court of Appeals concluded that a designation-of-treasurer form supported a finding that the candidate's statement of nonaffiliation was made in bad faith. However, in that case, the candidate had first filed to run as a Republican and had then withdrawn his candidacy and tried to run as an independent in the *same election*, but he had left his Republican designation-of-treasurer form on file for two months after filing the petition for his "independent" run. *Id*. at 764, 767-768.

{¶ 28} Here, by contrast, Law testified—and the board did not disagree—that the board's custom and practice was to provide candidates with designation-of-treasurer paperwork at the time they filed their petition and to request that the paperwork be returned within ten days. The board was surely aware of this practice, in which updating the treasurer form essentially becomes an extended part of the petition-filing process. And Law complied with the requirement, replacing the old form with a new and correct one within ten days of filing his petition. Law's timely compliance with the board's own process was not evidence that he intended to remain affiliated with the Republican Party.

### c. The newspaper article

{¶ 29} The board argues that Law's statement to the Tribune Chronicle that he was approached to run for mayor "after the deadline to compete in the primary election" implies that Law was running as an independent only because he missed the deadline to run as a Republican, not because he had disaffiliated from the Republican Party. However, we have previously found similar statements by candidates—some expressing an even clearer desire to have run in a partisan primary—not to constitute evidence of bad faith.

12

**{¶ 30}** In *Morris*, the candidate stated, under oath, "I wish I had run in the Democratic primary. We wouldn't be here today." *Morris*, 143 Ohio St.3d 507, 2015-Ohio-3659, 39 N.E.3d 1232, at ¶ 37. In context, however, we construed the statement as one of frustration with the protest process. *Id.* And, in *Monroe*, the candidate told a newspaper that it was more strategic to run as an independent but also stated that his independent candidacy reflected his ideology. *Monroe*, 137 Ohio St.3d 62, 2013-Ohio-4490, 997 N.E.2d 524, at ¶ 12-13. We held that that remark was not clear and convincing evidence that the candidate's statement of nonaffiliation was a sham. *Id.* at ¶ 27. Law's remark that the primary deadline had passed is no more indicative of bad faith than those in *Morris* and *Monroe*.

**{¶ 31}** Moreover, the board takes the remark out of context. The remainder of the article contains several statements from Law expressing his belief that party politics is not important on the local level and his intention to run a bipartisan campaign and administration. Read as a whole, the article paints a picture of a candidate who, regardless of what he might have done had he decided to run in time to participate in the primary, genuinely intends to take advantage of his independent status to draw on resources and talent from both parties. Law's statement is therefore not probative of a continuing party affiliation.

#### d. Past party activity

**{¶ 32}** The board is therefore left with the fact that Law has a long history of involvement with the Republican Party. But "[d]isaffiliation *by definition* presumes a history of support for or membership in a political party." (Emphasis sic.) *Davis*, 137 Ohio St.3d 222, 2013-Ohio-4616, 998 N.E.2d 1093, at ¶ 19. "A candidate's prior voting history, standing alone, cannot be a sufficient basis for disqualifying an independent candidate." *Id.* And, it should be noted that Law's political history includes participation in a Democratic and a nonpartisan primary election as well as, according to his testimony, a prior run for office as an independent. Law's previous involvement with the Republican Party was

insufficient to establish by clear and convincing evidence that his statement of nonaffiliation was made in bad faith. *See Morris* at ¶ 38 ("we do not see how the length of a candidate's partisan political life is necessarily probative of whether the candidate has truly left the party").

{¶ 33} Because the board fundamentally misconstrued the inquiry and based its decision on nonprobative evidence, we hold that the board abused its discretion, and we issue a writ of mandamus ordering the board to recertify Law's candidacy to the November ballot.

### *C. Prohibition*

{¶ 34} Finally, we deny Law's claim for a writ of prohibition. A claim for a writ reinstating a candidate to the ballot lies in mandamus, not prohibition. *See State ex rel. Emhoff v. Medina Cty. Bd. of Elections*, 153 Ohio St.3d 313, 2018-Ohio-1660, 106 N.E.3d 21, ¶ 13 (prohibition is the appropriate remedy "for challenging a decision of the secretary of state or a board of elections to place a candidate *on* the ballot" [emphasis added]).

### III. CONCLUSION

{¶ 35} We grant a writ of mandamus ordering the board to recertify Law's candidacy to the November ballot. We deny Law's claim for a writ of prohibition.

Writ of mandamus granted

and writ of prohibition denied.

O'CONNOR, C.J., and FRENCH, FISCHER, and DEWINE, JJ., concur.

STEWART, J., concurs in judgment only.

DONNELLY, J., concurs in part and dissents in part and would deny the writ of mandamus.

KENNEDY, J., not participating.

_____

Frost Brown Todd, L.L.C., Frank J. Reed Jr., and Brodi J. Conover, for relator.

Dennis Watkins, Trumbull County Prosecuting Attorney, and William J. Danso, Assistant Prosecuting Attorney, for respondent.

_____